LOUIS POLIDORI AND POLIDORI CONSTRUCTION CO., A NEW JERSEY CORPORATION, PLAINTIFFS–APPELLANTS, v. KORDYS, PUZIO & DI TOMASSO, AIA, AND SUPERIOR MILLWORK CO., INC., A CORPORATION, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 19, 1988—Decided November 3, 1988.

388

Before Judges PETRELLA and LANDAU.

*Terrence Dwyer* argued the cause for appellants (*Williams, Caliri, Miller & Otley,* attorneys; (*Terrence Dwyer* of counsel and on the brief).

*Thomas A. Kowalczyk* argued the cause for respondents Kordys, Puzio & DiTomasso (*Kimmelman, Wolff & Samson,* attorneys; *Thomas A. Kowalczyk* on the brief).

*William J. Pollinger,* attorney argued the cause for respondent Superior Millwork Co., Inc.

The opinion of the court was delivered by

LANDAU, J.A.D.

On leave granted Polidori Construction Co. and its sole owner, Louis Polidori, collectively and individually referred to hereafter as "Polidori," appeal from the Law Division grant of motions for summary judgment favorable to defendants-respondents Kordys, Puzio & Di Tomasso AIA (Kordys) and Superior Mill Work Co., Inc. (Superior). The case previously had been

remanded for trial on issues specified in *Polidori v. Kordys, Puzio & Di Tomasso*, 217 *N.J.Super.* 424 (App.Div.1987).

Polidori was the owner of a two family house in which a family named Ferrazzano were tenants. Polidori had acted as the general contractor to build the house and performed carpentry and general construction work. The architecture for the house, including the stairway running between the basement and first floor was done by Kordys. The stairs were built by Superior. A plumber named Gaetano installed the plumbing.

Mrs. Ferrazzano fell on the basement stairs after checking a plumbing leak caused by the bursting of a pipe installed by Gaetano, which may have been inadequately insulated.

The Ferrazzanos sued Polidori and Gaetano. Almost two years after suit commenced, Polidori attempted to join Superior and Kordys as third-party defendants. The Ferrazzanos moved at the same time to join Superior and Kordys as direct defendants. These motions were brought and denied in May 1984. On April 16, 1984, the Ferrazzanos' suit against Polidori was settled for $80,000. It appears, therefore, that the first suit had been settled when motions to join Superior and Kordys as third-party defendants and as direct defendants were brought.

In July 1985, Polidori sued Kordys and Superior. A separate action brought by the Ferrazzanos against Superior and Kordys had earlier been dismissed by reason of the statute of limitations.

In the suit against Kordys and Superior, Polidori asserted five theories: (1) negligence; (2) contract breach; (3) strict liability; (4) indemnification; and (5) contribution.

Summary judgment was granted to Kordys and Superior on the issues of indemnification and contribution. Contribution

was barred because there was no "judgment" as required by
*N.J.S.A.* 2A:53A–3. Indemnification was barred by reason of
Polidori's partial fault.

At the same time as the counts for contribution and indemni-
fication were dismissed, the trial judge dismissed the counts
sounding in negligence, breach of contract, and strict liability.
On Polidori's first appeal, we affirmed the dismissal on the
issues of contribution and indemnification. *Polidori,* 217 *N.J.
Super.* at 432, 433. Citing *Young v. Steinberg,* 53 *N.J.* 252
(1969), Judge Long's opinion held that a settlement and dismis-
sal did not fulfill the requirement of a judgment as required by
*N.J.S.A.* 2A:53A–3. The opinion also barred indemnification
because Polidori's negligence was not solely vicarious as would
be the case were it only the owner. By reason of Polidori's
status as general contractor of its own building, the opinion
also stated that Polidori had "primary" liability under *Aron-
sohn v. Mandara,* 98 *N.J.* 92, 98 (1984) by reason of the implied
covenant that contract work will be performed in a reasonably
good and workmanlike manner. *See Polidori,* 217 *N.J.Super.*
at 433.

Thus, we held in *Polidori* that judgments for defendants
were properly given on the issues of contribution and indemnifi-
cation. However, we reversed the trial judge's determination
that Polidori's allegations of negligence, breach of contract, and
strict liability were essentially claims for contribution or indem-
nification. We held that Polidori's alleged economic losses for
the cost of repair of the stairs and the loss in the value of his
house attributable to improper construction of the stairs were
distinct from claims of contribution or indemnification, and
remanded for a jury trial on those issues. *Id.* at 433–434.
Moreover, we held that Polidori's $80,000 settlement with the
Ferrazzanos could be, in whole or part, considered to be conse-
quential damages theoretically recoverable under an implied
contract theory if Polidori proved that such damages were

reasonably foreseeable by Kordys and Superior. *Id.* at 434–435.

Neither Superior nor Kordys requested reconsideration of this opinion as permitted by *R.* 2:11–6. Such reconsideration is automatically available within 10 days, and thereafter may be sought by motion and order under that Rule. No petition for certification is disclosed in the record.

Instead of proceeding on the order of remand for jury trial, the trial judge entertained defendants' further motion for summary judgment under a Uniform Commercial Code theory and another motion to dismiss for failure to state a claim. These were denied, as were subsequent "motions for relief" from those denials. (*See Michel v. Michel,* 210 *N.J.Super.* 218 (Ch. Div.1985), as to the policy against entertaining motions for reconsideration at the trial level when based only on the assertion that the first decision was wrong). Those theories had not been previously raised on appeal, although they presumably could have been.

Following these denials, motions for leave to appeal were also denied.

Thereafter, Kordys and Superior brought yet another motion for summary judgment, this time on the ground that Polidori's "primary liability" barred any action respecting recovery of *Hadley v. Baxendale* damages. On this motion, the trial judge undertook to reconsider the same legal theory previously relied on for disposition of the first appeal in the opinion of Judge Long. It would appear that the trial judge felt free to disregard the law of the case established by the previous opinion because of a perception that, in light of the statement at 217 *N.J.Super.* 433 that Polidori had "primary" liability (*Polidori,* 217 *N.J.Super.* at 433), principles established in *Mayer v. Fair-*

*lawn Jewish Center,* 38 *N.J.* 549 (1962) and *Port Auth. v. Honeywell Prot. Serv.,* 222 *N.J.Super.* 11 (App.Div.1987) barred Polidori's relief.

The remanded claims respecting loss of value and cost to repair were not affected by the judgment under appeal, and those issues were left open for trial.

We granted leave to appeal to test the validity of the summary judgments entered and we now reverse.

■ The key to our determination has been aptly summarized by Professor Moore, 6A *Moore's Federal Practice* (2 ed. 1987), § 59.16 at 59–337 to 338:

> When a case has been decided by an appellate court and remanded to the trial court, whatever was before the appellate court, and disposed of by its decree, is considered as finally settled; the appellate decree constitutes the law of the case; and the trial court must carry it into execution, according to the mandate.... If clarification is, nevertheless, necessary, a motion in the appellate court is a proper method of obtaining a clarification.... [6A *Moore's Federal Practice* (2 ed. 1987), § 59.16 at 59–337 to 338 (foot notes omitted)].

*See also* 1B *Moore's Federal Practice* (2 ed. 1987), § 0.404[10].

As we observed above, our Rules permitted Kordys and Superior to bring a motion for reconsideration either on a timely basis within 10 days, or by securing an order of the court. Had such action been taken, the matter would have been considered by the same judges who decided the initial appeal. The motions and judgment under review circumvent rules established in the interest of justice to preserve finality, while affording fair opportunity to litigants to secure reconsideration in appropriate cases. Utilization of this procedure is necessary to avoid the present unacceptable anomaly of a trial judge who sits in review of the reviewing court, and the equally

unsatisfactory anomaly of requiring a second appellate panel to review an appellate ruling previously entered.

■ Assuming *arguendo* that we have power to perform this function [1], and to deviate from the law of the case as enunciated in a prior appeal of the same matter, it is clear that as a matter of practice such power should not be exercised unless the first decision was palpably wrong. *Id.* § 0.404[1] at 121. As Judge Calvert Magruder of the First Circuit stated:

> Though the power exists to reopen the points of law already decided, it is a power which will necessarily be exercised sparingly, and only in a clear instance of previous error, to prevent a manifest injustice....

> When the doctrine of law of the case is being invoked in an intermediate appellate court, such as the Circuit Court of Appeals, another consideration enters. After we affirm a judgment on the ground that our decision on an earlier appeal has become the law of the case, the Supreme Court is nevertheless free to take the case on certiorari and reverse our judgment. Sometimes it does so even where application for certiorari to review our earlier judgment had been applied for and denied. Our law of the case is not the Supreme Court's law of the case. Our judgment on the second appeal stands or falls on its merits and has no improved standing before the Supreme Court from the fact that it resulted from an application of our law of the case. This being so, it would seem that if on second appeal we thought our earlier opinion was erroneous, we ought sensibly to set ourselves right, rather than to invite reversal above. But mere doubt on our part is not enough to open up the point for full reconsideration. Often when the decision is originally rendered we have doubts enough. We do the best we can, make our decision and pass on to something else. [*White v. Higgins*, 116 *F.*2d 312, 317 (1940) (citations omitted)].

■ We hold that unless good cause is shown for a litigant's failure to comply with *R.* 2:11-6 neither the trial judge nor

---

[1]*See Hayman Cash Register Co. v. Sarstein,* 669 *F.*2d 162, 170 n. 10 (3 Cir.1982) and *Todd & Co., Inc. v. S.E.C.,* 637 *F.*2d 154, 157 n. 4 (1980) observing that the Third Circuit has not yet recognized an exception to the law of the case doctrine in subsequent proceedings for initial decisions that are "clearly erroneous and would work a manifest injustice."

another part of that same appellate court should undertake to again consider determinations made in the matter. This must be so, whether the dissatisfied litigant seeks only to reargue existing principles of law or to present new or previously uncited authorities.

■ Even were this matter properly brought before us on a motion for reconsideration of the law previously established in the case, it falls short of presenting evidence of a "palpably wrong" decision as discussed by Professor Moore. We think it reasonable to assume that the judges who decided *Polidori I* intended their opinion to be internally harmonious, although using the word "primary" to describe the liability of Polidori by reason of his status as contractor.[2] Under our recent opinion in *Port Auth. v. Honeywell Prot. Serv.*, 222 *N.J.Super.* 11 (App. Div.1987) cited by defendants, it remains clear that while there may be independent negligence sufficient to bar indemnification, this does not necessarily bar recovery on a breach of contract theory by a contractee against his contractor, if the only basis for the contractee's liability arises out of a condition caused by the contractor, without the contractee's active negligence. We see nothing in principle to prevent application of *Honeywell*'s implied covenant rule to an owner-prime contractor who wishes to sue his subcontractor on a contract theory, if the only fault of the prime contractor arises from his failure to cure a problem caused by the subcontractor. This of course would be the jury question mentioned by Judge Long in her opinion. *Polidori*, 217 *N.J.Super.* at 436. As there is no acceptable basis for us to reconsider or modify the law established in that opinion, we reverse and again remand for its implementation.

---

2It might have been more accurate to consider the question in terms of whether Polidori was guilty of *active negligence*. *See Port Auth. v. Honeywell Prot. Serv.*, 222 *N.J.Super.* 11, 29 (App.Div.1987).