295 N.J. Super. 374 (1996)
685 A.2d 60
CYNTHIA CUMMINGS AND JAMES CUMMINGS, PLAINTIFFS-APPELLANTS,
v.
HARVEY BAHR AND MADELINE BAHR, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1996.
Decided December 3, 1996.
*378 Before Judges MUIR, Jr.,[1] KLEINER and COBURN.
Michael D. Carroll argued the cause for appellant Cynthia Cummings (Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, attorneys; Mr. Carroll, of counsel and on the brief; Julie L. Davis, on the brief).
John M. Amorison argued the cause for respondents (Jay H. Greenblatt & Associates, attorneys; Nicholas Kierniesky, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiffs Cynthia Cummings and John Cummings, suing per quod, appeal from the denial of their second motion for reconsideration of a prior decision which granted summary judgment to *379 defendant Madeline Bahr.[2] Our decision, affirming the Law Division, is predicated upon the theory of judicial estoppel and its interrelationship with R. 4:49-2.

I
Defendant, Madeline Bahr, is the widow of Harvey Bahr, who died of cancer in early 1992. Prior to the diagnosis of his fatal illness, Mr. Bahr performed all of the gardening chores on the ten-acre plot surrounding the family home. These chores included tending to rose bushes, planting fig trees, and cultivating grapevines. After Mr. Bahr became ill, he prepared a list of chores which still needed to be attended to on the property. Mr. Bahr had recently acquired some new fig trees and grapevines but had not had the opportunity to plant them formally. One of the tasks on Mr. Bahr's list of chores was the planting of these recent acquisitions.
On April 5, 1992, plaintiff Cynthia Cummings, accompanied by two friends, visited her mother Mrs. Bahr, the defendant. The primary purpose of that visit is in dispute.
Plaintiff contends that she visited her mother for the primary purpose of moving the fig trees and grapevines from where they had been placed by her father to the location where each tree or grapevine was to be permanently planted. As a secondary matter, she was going to partake in a spaghetti dinner. Upon her arrival at her mother's house, plaintiff and her friends were invited in, and refreshments were served. Later, defendant, plaintiff, and plaintiff's two friends walked to the rear of the property where the *380 fig trees and grapevines had been temporarily placed. Although plaintiff had lived with her parents on this property, she had not visited this rear area since moving away in 1974.
Defendant contends that plaintiff, whose husband and children were out of town, was invited to her home primarily for dinner. After dinner, defendant accompanied her daughter and her daughter's two friends to the rear of the property to inspect the fig trees and grapevines to ascertain whether it was feasible to move them.
To reach the rear of the property, the foursome was required to walk through an unkempt, grassy area described by plaintiff as being, more or less, "like a meadow." While the area is not wooded, plaintiff stated in her deposition that there were fruit trees planted in the area. Although the grass in the rear of the home had been regularly cut by Harvey Bahr prior to his final illness, it had not been maintained after his death. The grass was approximately three or four inches high on that afternoon.
While walking in this area, plaintiff's foot became entangled in a "rose runner," or "green rose cane," which was hidden under the grass. Plaintiff, unable to untangle her leg, fell and suffered severe leg injuries including two fractures of her right ankle.
Plaintiff's complaint, filed April 4, 1994, alleged that defendant was negligent in maintaining the property and in failing to warn her of the deteriorated condition of the rear yard including "ground tree roots." The words "invitee," "licensee," or "social guest" are not contained in the complaint. There is, in fact, no allegation or discussion of plaintiff's status on the land within the complaint. Defendant's answer consisted of a general denial of plaintiff's allegations and several separate defenses but did not specifically refer to plaintiff's status.
Defendant filed a motion for summary judgment, returnable December 1, 1995. In the brief in support of her motion, defendant, relying on Snyder v. I. Jay Realty Co., 30 N.J. 303, 153 A.2d 1 (1959), asserted that plaintiff was a social guest at defendant's home and, as such, was a licensee. Defendant also cited Berger v. *381 Shapiro, 30 N.J. 89, 152 A.2d 20 (1959), which describes the duty owed by a landowner to a licensee:
A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he
(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and
(b) invites or permits them to enter or remain upon the land, without exercising reasonable care
(i) to make the conditions reasonably safe, or
(ii) to warn them of the condition and the risk involved therein.
[Id. at 99, 152 A.2d 20 (quoting Restatement of Torts § 342).]
Defendant also relied, in part, on defendant's deposition testimony indicating that her deceased husband maintained the grounds in the rear of her home, that she rarely frequented the rear ground, and had not personally maintained that area after her husband's death. Defendant contended that she was unaware that rose runners grew in that area or that rose runners had spread under and into the grass.
In plaintiff's response, it was admitted that plaintiff was a licensee:
Plaintiff recognizes that New Jersey law provides that a household social guest is generally classified as a licensee even when the guest is performing some incidental household task. Plaintiff also recognizes that defendant has no duty to discover latent defects when dealing with a licensee. However, the landowner must warn a social guest of any dangerous condition which he or she had actual knowledge of and of which the guest is unaware. (Citations omitted).
Plaintiff then proceeded to cite various portions of defendant's deposition testimony to demonstrate that, despite defendant's disclaimer of knowledge, defendant had actual knowledge of the dangerous condition resulting from rose runners. Plaintiff's brief also stated that rose runners are a "dangerous natural condition."
In deciding the motion, Judge Holston concluded:
In this case it seems to me clear that the defendant, the mother, didn't know of the dangerous condition and even had she known would not likely have reasonably foreseen the danger. Plaintiff in the exercise of reasonable care should have been more cautious. An owner is not liable for injuries to a social guest when the owner is not aware of the dangerous condition. I don't see how a reasonable jury could *382 find that the defendant mother owed a duty to warn her daughter in this case. Defendant's deceased husband had done all the gardening and the defendant simply had no responsibility toward the roses. In effect she didn't promise her daughter a rose garden.
Plaintiff, pursuant to R. 1:7-4 and R. 4:49-2, filed a timely motion for reconsideration. R. 4:49-2 provides, in part, "[t]he motion shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." (Emphasis added).
Plaintiff's counsel's certification, filed in support of the motion for reconsideration, sets forth the following as the basis for reconsideration:
3. Prior [to the December 1, 1995 motion], an arbitration panel found the defendant and the plaintiff 50% negligent despite the argument made by defense counsel regarding liability.
4. Although the award was appealed de novo, and plaintiff's counsel realizes the Court cannot rely on the factual findings of the arbitrators, the fact that two arbitrators found liability in favor of the plaintiff, surely supports the conclusion that genuine issues of fact surrounding defendant's notice of the dangerous condition remain outstanding and should be left for the jury.
Plaintiff did not describe any "matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." See R. 4:49-2
The very language cited in R. 4:49-2 served as the response to plaintiff's motion for reconsideration and again at oral argument on the return date for that motion.
In denying plaintiff's motion for reconsideration, Judge Holston repeated a portion of his factual conclusions from when he granted defendant's summary judgment motion. He then properly held that plaintiff was not entitled, pursuant to R. 4:49-2, to relief. Specifically, Judge Holston stated:
[T]his defendant neither knew nor had reason to know of a dangerous condition on her own property. She had no requirement to go back there and cut that grass and to ascertain whether or not underneath that grass there may have been rose runners. What she had an obligation to do would be to reveal to her daughter or any social guest that which could not have been seen and would constitute a *383 dangerous condition if she knew about it or had reason to know about it. I don't believe she had either.
I'm satisfied also that the standards for reconsideration haven't been met here, There is no new law cited nor has there  is no legal authorities about which this Court overlooked, nor do I believe any facts which this Court overlooked.
Plaintiff then filed her second motion for reconsideration. In addition to submitting a brief, plaintiff's counsel filed a certification which stated, in part:
2. Upon return to the office on January 19, 1996, [the associate who appeared on the motion for reconsideration] and I reviewed the denial [sic] of defendant's motion for summary judgement and the denial of plaintiff's motion for reconsideration.
....
4. Our review of the facts ... indicated that several legal issues are involved that had not been briefed or argued, and Counsel believes that the Court has overlooked the same.
5. I am filing this motion for reconsideration in order to allow this Court an opportunity to revisit the issue of plaintiff's status as an invitee vs. a licensee, as the case law establishes that the plaintiff is an invitee and [sic] owed a higher standard of care than a licensee.
Defendant responded and once again renewed his contention that plaintiff was not entitled to relief, citing R. 4:49-2. In addition to the R. 4:49-2 argument, defendant's letter brief also addressed the legal distinctions of invitee and licensee status.
Judge Holston again denied plaintiff's motion stating:
Now plaintiff argues at this second reconsideration that this Court erred notwithstanding plaintiff's own arguments, because plaintiff was not a social guest but was really an invitee because the purpose of plaintiff's visit was to move grapevines and figs for the defendant after plaintiff's father passed away. Since plaintiff was there to confer a benefit on the defendant. the plaintiff was an invitee. Defendant would infer that analysis be required to use reasonable care to make the premises safe, and this includes to make a reasonable inspection to discover defective conditions.... Plaintiff therefore argues that her mother had a duty to inspect and remedy the roots from the rose bushes.
Now the first opposition of the defendant is that the plaintiff is trying to get a second bite at the same apple, that plaintiff's brief is not directed at new law or facts which movant feels that the Court has overlooked or as to which it has erred. That's the requirement of Rule 4:49-2. Plaintiff's now attempting simply on a third argument, by the way, by a third lawyer, to argue a different legal theory than that which was proffered either in opposition or at the first reconsideration.

*384 II
R. 4:49-2 was thoroughly discussed in D'Atria v. D'Atria, 242 N.J. Super. 392, 576 A.2d 957 (Ch.Div. 1990), where the court noted that "[r]econsideration is a matter within the sound discretion of the Court, to be exercised in the interest of justice." Id. at 401, 576 A.2d 957 (Citing Johnson v. Cyclop Strapping Corp., 220 N.J. Super. 250, 257, 263, 531 A.2d 1078 (App.Div. 1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988); Michel v. Michel, 210 N.J. Super. 218, 509 A.2d 301 (Ch.Div. 1985)).
The Chancery Division judge in D'Atria specifically noted:
Reconsideration should be utilized only for those cases which fall into that narrow corridor in which either 1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence....
Alternatively, if a litigant wishes to bring new or additional information to the Court's attention which it could not have provided on the first application, the Court should, in the interest of justice (and in the exercise of sound discretion), consider the evidence. Nevertheless, motion practice must come to an end at some point, and if repetitive bites at the apple are allowed, the core will swiftly sour. Thus, the Court must be sensitive and scrupulous in its analysis of the issues in a motion for reconsideration.
[Id. at 401-02, 576 A.2d 957.]
It is clear that Judge Holston correctly applied R. 4:49-2 in denying plaintiff's second motion for reconsideration. Plaintiff offered a new theory as to liability premised on a new characterization of plaintiff's status. The factual predicates of plaintiff's new theory were available when plaintiff responded to defendant's motion for summary judgment. No new facts had been uncovered by plaintiff which would warrant either the first or second motion for reconsideration. Nor did plaintiff point to decisions that the motion judge had overlooked or misapplied when he granted defendant summary judgment. We also note that in plaintiff's first motion for reconsideration counsel continued to assert that plaintiff was a licensee. It was only when plaintiff's counsel, an associate, discussed the matter with a senior partner in the same *385 law firm, that plaintiff's counsel concluded that plaintiff was an invitee.

III
We also conclude that plaintiff's attempt to argue invitee status is barred by judicial estoppel. The doctrine of judicial estoppel operates to "bar a party to a legal proceeding from arguing a position inconsistent with one previously asserted." N.M. v. J.G., 255 N.J. Super. 423, 429, 605 A.2d 709 (App.Div. 1992). See also Levin v. Robinson, Wayne & La Sala, 246 N.J. Super. 167, 178, 586 A.2d 1348 (Law Div. 1990); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir.), cert. denied, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); Shell Oil Co. v. Trailer & Truck Repair Co., Inc., 828 F.2d 205, 209 (3d Cir.1987).
As noted in Oneida, supra:
This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation.
[848 F.2d at 419 (citations omitted.)]
Although judicial estoppel most often arises when a party takes inconsistent positions in different litigation, as in Levin, supra, or N.M. v. J.G., supra, it can be equally applicable where a litigant asserts inconsistent legal positions in different proceedings in the same litigation.
At first blush, the doctrine of judicial estoppel appears to be well-defined. It is clear from precedent cases discussing judicial estoppel, however, that there are different theoretical notions about how to apply this important doctrine. See generally Douglas W. Henkin, Comment, Judicial Estoppel  Beating Shields into Swords and Back Again, 139 U. Pa. L.Rev. 1711 (1991); Rand G. Boyers, Comment, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 Nw. U.L.Rev. 1244 (1986).
*386 In particular, there is the oft-cited requirement that in order to be judicially estopped from asserting a position contrary to a previously asserted position, a party must have "succeeded in maintaining that position."[3]Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 620, 581 A.2d 91 (App.Div. 1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991) (quoting Brown v. Allied Plumbing & Heating Co., 129 N.J.L. 442, 30 A.2d 290 (Sup.Ct.), aff'd, 130 N.J.L. 487, 33 A.2d 813 (E. & A. 1943)); contra Levin, supra, 246 N.J. Super. at 189-90, 586 A.2d 1348 ("no New Jersey court has ever adopted a requirement that a party must `successfully assert' the prior position to be judicially estopped from later asserting a contrary position.").
We agree that a party must successfully assert a position in order to be estopped from asserting a contrary position in future proceedings. What "successfully assert" means, however, needs further discussion.

A
It is well established that a party can seek alternative forms of relief. See R. 4:5-2. Judicial estoppel does not preclude inconsistent positions from being pleaded in the alternative. The view espoused by some courts that judicial estoppel does not require prior success might be seen as infringing on the ability of parties to plead in the alternative. Judicial estoppel does not preclude such alternate pleadings because at the time that the pleadings are made, neither the parties nor the court have relied on one theory over another.
*387 Nor does judicial estoppel bar every conceivable inconsistency. "[R]ather, it is designed to prevent litigants from `playing fast and loose with the courts.'" Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir.1996) (citation omitted).
Prior success does not mean that a party prevailed in the underlying action, it only means that the party was allowed by the court to maintain the position. "The doctrine of judicial estoppel applies to a party who has successfully and unequivocally asserted a position in a prior proceeding...." Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir.1982). "Whether the party ... benefitted from its earlier position or was motivated to seek such a benefit may be relevant insofar as it evidences an intent to play fast and loose with the courts. It is not, however, an independent requirement for application of the doctrine of judicial estoppel." Ryan Operations, supra, 81 F.3d at 361.
It is the integrity of the judicial process that is protected by the doctrine of judicial estoppel. Edwards, supra, 690 F.2d at 599. Parties should not be allowed "to play fast and loose" with the judicial system. Levin, supra, 246 N.J. Super. at 180, 586 A.2d 1348.
The entire controversy doctrine acts to insure that an entire controversy will be determined in a single judicial proceeding. Cogdell v. Hospital Ctr. at Orange, 116 N.J. 7, 26, 560 A.2d 1169 (1989). The entire controversy doctrine exists because "fragmented and multiple litigation takes its toll on not only the parties but the judicial institution and the public." Id. at 23, 560 A.2d 1169. It is this same policy concern that mandates our view of judicial estoppel.
Thus, we conclude that a position has been "successfully asserted" if it has helped form the basis of a judicial determination. The judicial determination does not have to be in favor of the party making the assertion. If a court has based a final *388 decision, even in part, on a party's assertion, that same party is thereafter precluded from asserting a contradictory position.
Courts have the right to demand precision from counsel when making applications to the court. A court should not be put in the position of hearing a new and contradictory theory at a second motion for reconsideration.

B
In response to defendant's motion for summary judgment, plaintiff argued:
Plaintiff recognizes that New Jersey law provides that a household social guest is generally classified as a licensee even when the guest is performing some incidental household task. Plaintiff also recognizes that defendant has no duty to discover latent defects when dealing with a licensee. However, the landowner must warn a social guest of any dangerous condition which he or she had actual knowledge of and of which the guest is unaware.
When plaintiff returned to court on their second motion for reconsideration, counsel argued:
Of critical import to the matter at bar is determining the status of plaintiff at the time she was at the property. Was she an invitee or a licensee? Originally, in the motion for summary judgment, the defendant had claimed that the purpose of the plaintiff's visit was purely a social one and therefore, plaintiff's position was that of a mere social licensee. As a social licensee, the standard of care is significantly reduced. However, in reviewing the deposition transcripts of both plaintiff and defendant, it is clear that the plaintiff is not a mere social licensee.
This new position is clearly antithetical to the position that plaintiff had held fast to from the time that the initial pleadings were filed through the first motion for reconsideration.
Clearly, plaintiff had the ability and the obligation to review defendant's deposition thoroughly before filing their brief in opposition to summary judgment. Plaintiff should not be permitted to pick and choose alternative theories of liability and assert them ad seriatim in separate proceedings in the same litigation.
Plaintiff had conceded the fact that she was on her mother's property as a licensee. A final judicial determination was made which relied on this conceded fact. Therefore, plaintiff is judicially *389 estopped from claiming in this, or in any other, litigation that she was an invitee. Clearly, if she had plead her status in the alternative, she would not have had this problem. "A party cannot have its cake and eat it too." Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1177 (D.S.C. 1975)

IV
Plaintiff contends that the motion judge erred in failing to permit their second motion for reconsideration. We disagree. The judge abided by the clear meaning of R. 4:49-2 and, in doing so, he clearly did not abuse his discretion. Although our reported decisions do not clearly articulate the standard of review where there is a denial of a motion for reconsideration, the standard in the Federal courts is "abuse of discretion." CNF Constructors, Inc. v. Donohoe Const. Co., 57 F.3d 395, 401 (4th Cir.1995). We now adopt that standard as the appropriate norm for appellate review of a denial of a motion for reconsideration.
Because we conclude that plaintiff was not entitled to a reconsideration of her claim based upon the standard of care owed to an invitee, it is unnecessary to consider whether the motion judge's remarks as to the legal efficacy of that claim were correct or incorrect. Nor do we need to consider whether defendant would have been entitled to summary judgment had plaintiff initially argued "invitee" status. Those arguments raised by plaintiff are irrelevant. Plaintiff originally argued the law relevant to a landowner's duty to a licensee. The motion judge fully and correctly applied the law to the facts as argued, and concluded that defendant was entitled to summary judgment. See Brill v. The Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995). The judge thereafter correctly applied R. 4:49-2 in denying plaintiff's consecutive motions for reconsideration and in so ruling he did not abuse his discretion.
Affirmed.
NOTES
[1] Judge Muir did not participate in oral argument, but with the consent of the parties participated in the decision.
[2] Although the caption bears the name of Harvey Bahr, Harvey Bahr was deceased when plaintiff's complaint was filed. The record fails to explain why plaintiffs named Harvey Bahr as a party defendant. There is no order amending the caption within the record on appeal. Despite the caption, we have elected to treat defendant Madeline Bahr as the sole defendant and all references to the defense will be in the singular. Likewise, plaintiffs will be referred to in the singular for case of description. A reference to "plaintiff" will refer to Cynthia Cummings even though James Cummings is a party.
[3] Among the other factors that courts have analyzed in determining whether judicial estoppel should apply are: whether the party seeking estoppel was a party to the prior litigation; whether the opposing party relied on the prior statement; and whether the party asserting the inconsistent statement is attempting to "play fast and loose" with the judicial system. Henkin, supra, 139 U. Pa. L.Rev. at 1723-24.