722 A.2d 944 (1998)
317 N.J. Super. 574
Helen GLASS, Plaintiff-Respondent,
v.
SUBURBAN RESTORATION CO., INC., and John Markovic, Individually, jointly and severally, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1998.
Decided December 30, 1998.
*945 David A. Schrader, for defendants-appellants (Raich, Paykin, Krieg & Schrader, attorneys, West Orange; Dennis J. Cummins, Jr., Fair Lawn, on the brief).
Richard L. Hertzberg, Iselin and Helen K. Glass, pro se, for plaintiff-respondent (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, and Helen K. Glass, attorneys; Richard L. Hertzberg and Ms. Glass, on the brief).
Before Judges PETRELLA, CUFF and COLLESTER.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Defendants Suburban Restoration Co., Inc. and John Markovic[1] (collectively "Suburban") appeal from the dismissal with prejudice, on the eve of a peremptory trial date, of their legal malpractice counterclaim against Helen Glass, their former attorney, for failure to comply with court orders to submit an expert's report. They also appeal from the jury verdict awarding attorney's fees to Glass in the amount of $56,165.28, which was reduced by the amount Suburban had already paid to $27,405.53. Their motions for a new trial or, in the alternative, remittitur, were denied.
On appeal, Suburban argues that the court abused its discretion in dismissing their counterclaim with prejudice; the court should have granted their request for an adjournment; and that their motion for a new trial or remittitur should have been granted. Among Suburban's arguments are various subsidiary issues, including whether the same judge, who entered earlier orders requiring the submission of an expert's report within a fixed time period, should have ruled with respect to the motion to dismiss the counterclaim, and whether Glass, as attorney for Suburban, had any legal basis to file a summary judgment motion in one of the matters she handled which allegedly resulted in extensive legal fees.
From October 1992, Helen Glass represented Suburban and provided legal services for a period of about eight months on approximately fourteen matters in New Jersey and New York, until Suburban discharged Glass from all but one matter on June 3, 1993. Subsequent to June 3, 1993, Glass continued to represent Suburban on a matter referred to as "International Fidelity."
During the period Glass represented Suburban she submitted bills aggregating $56,165.28 for legal services, including $1,669.03 for disbursements. Suburban paid $28,759.75 in several payments, the last on April 29, 1993. Thereafter, on June 7, 1994, Glass *946 filed a complaint for the unpaid balance[2] against Suburban Restoration, as well as Markovic, as personal guarantor of the corporation's obligations.
Rather than fully detail the extensive procedural history of this case we need merely highlight the matters relevant to our decision. On November 23, 1994, Suburban filed its answer which essentially denied most of the allegations of the complaint and its counterclaim alleging, in vague and general terms, legal malpractice against Glass.
On or about January 4, 1995, Glass served Suburban with a demand for production of documents and a first set of interrogatories. The attorney defending Glass on the legal malpractice counterclaim served a set of interrogatories on Suburban on or about January 27, 1995. Thereafter, on April 21, 1995, Suburban served Glass with interrogatories, and on June 22, 1995, a notice to produce documents. Suburban also served a notice to take Glass's deposition on August 16, 1995.
Glass furnished answers to interrogatories and provided documents on October 2, 1996. Glass was deposed on November 21, 1996 and again on January 15, 1997. As for Suburban, an order dated October 16, 1995 directed Suburban to produce by a date certain more specific answers to interrogatories, documents as earlier requested, and an expert report or else be precluded from relying on any expert. The record is unclear if Suburban produced more specific answers to interrogatories or the requested documents.
On October 11, 1996, Glass moved for summary judgment dismissing the malpractice counterclaim. A November 22, 1996 order by Judge Troast granted Glass's summary judgment "without prejudice" for forty-five days, to allow Suburban additional time to produce an expert report. Subsequent orders to the same effect were entered. Suburban thereafter filed additional motions for extension of time to contest the summary judgment and also moved to vacate Judge Simon's earlier order barring expert testimony. By an order dated March 21, 1997, Judge Simon effectively again extended the time for Suburban to procure an expert report despite Suburban's repeated failures in producing an expert report. On a later motion, Judge Troast deferred making a decision in order to allow Judge Simon an opportunity to reconsider the motion before her with respect to the expert's report. That motion before Judge Simon was subsequently denied, with reconsideration thereafter denied, except that Judge Simon indicated she would entertain a motion "upon submission of an expert report." Shortly after that order was entered Judge Simon was reassigned to the Chancery Division.
On the peremptory trial date, Judge Guida resolved the pending issues against Suburban. By an order dated May 14, 1997, Judge Guida dismissed the malpractice counterclaim with prejudice, after consulting with Judge Simon,[3] because no expert report had been produced despite all the prior orders. Suburban's request for additional time to produce an expert's report was denied and it was precluded from presenting expert opinion testimony with respect to Glass's claim for attorneys fees.
After presenting testimony and documentary evidence at the jury trial before Judge Smith, Glass was awarded attorneys fees as previously indicated. Judge Smith denied Suburban's motion for a new trial or remittitur and denied Glass's cross motion for attorney fees for a frivolous claim on July 11. Judge Smith did award prejudgment interest to Glass in a July 23 order. Suburban appeals Judge Guida's May 14, 1997 order, as well as Judge Smith's July 11 and July 23, 1997 orders.
We have considered all of Suburban's arguments in light of the record and the arguments presented and conclude that they are *947 without merit. R. 2:11-3(e)(1)(B) and (E). We add only the following comments.
Suburban's challenge to the dismissal with prejudice, on the eve of a peremptory trial date, of their legal malpractice counterclaim against Glass, came essentially after the entry of numerous orders requiring timely production of an expert's report and denial of reconsideration motions that sought continued extensions. The various Law Division judges were extremely indulgent. The constant resort by Suburban to reconsideration applications was at best an abuse of the letter and the spirit of the rules, see Cummings v. Bahr, 295 N.J.Super. 374, 384, 685 A.2d 60 (App.Div.1996); Palumbo v. Township of Old Bridge, 243 N.J.Super. 142, 147 n. 3, 578 A.2d 1234 (App.Div.1990), and a disregard of the impact of court orders. As of the date Judge Guida dismissed the counterclaim with prejudice, Suburban had not submitted an expert's report with respect to the vague allegations of attorney malpractice, despite the fact that numerous orders had been entered directing such a report to be submitted within specified time periods.
Moreover, it was only after Judge Guida ruled on May 12, 1997 that he was dismissing the counterclaim with prejudice, that Suburban produced an expert report dated May 13, 1997, which was too little too late. Judge Guida entered an order memorializing the dismissal on May 14, 1997 and we denied Suburban's emergent motion for leave to appeal in a May 16, 1997 order which noted:
We have reviewed the entire record, including the tape of the argument before Judge Guida on May 12, 1997. The papers submitted to this court indicate (aside from attorney action) that the defendants intentionally and personally delayed for a lengthy period of time in authorizing their attorney to obtain an expert and the record supports Judge Guida's specific finding that "both Judge Simon and Judge Troast were misled as was the plaintiff," and that there was surprise and prejudice to plaintiff, etc. The "excuse" in the reply brief is meritless. As Judge Guida noted, the history of the matter was indeed "tortured" and his determinations of misleading, surprise and prejudice are substantiated by the record. We note that even if the belated report dated the day after the decision of Judge Guida, and bearing a fax machine date/time of May 14, was part of the record, and it was not, there are many assumptions, speculation, references to documents not reviewed, as well as what are questions of strategy and tactics. See Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520 [666 A.2d 146] (1995). In light of the discovery violations and the history of disregard of court orders, as well as disregard of the mandate of R. 4:24-1, we have no warrant to interfere with the various and conscientious decisions of the several trial judges in this three year old case for which there were apparently as many as fifteen trial dates. See Abtrax Pharmaceutical [Pharmaceuticals], Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 515-517 [655 A.2d 1368] (1995); Westphal v. Guarino, 163 N.J.Super. 139, 145-146, 394 A.2d 377 (App. Div.) [aff'd, 78 N.J. 308, 394 A.2d 354 (1978).]
We recognize that there were a number of judges who were involved over many months with respect to Glass's efforts to obtain an expert report from Suburban regarding its malpractice allegations. During that time the assignments of various judges changed. For instance, Judge Simon had ruled on at least four previous motions regarding the expert report, with her final order being essentially a suggestion to Suburban to produce an expert report before coming in for reconsideration to vacate a previous order. Suburban neglects to say that virtually all the numerous orders were on motions for reconsideration[4] filed by Suburban of the order that barred the use of an expert due to the failure to comply with court orders regarding an expert's report. Judge Simon's involvement was limited and exclusive to this one issue.
Although a fairly recent amendment to R. 1:6-2(d) has the precatory language that to the extent practical "all subsequent motions in the cause ... shall be heard by the same *948 judge who heard the first motion in the cause," this rule does not require the same judge to hear the motions, particularly in as straightforward a matter as presented for resolution in this case. Indeed, we would expect, in view of the obvious and clear nature of the matter before Judge Guida, that any judge could have heard this matter at any time without the need of an evidentiary hearing. In any event, in view of the obvious changes in assignments, it was clearly not practical for the same judge to be required over these many months to continue with every aspect of this particular case. The argument is essentially frivolous.
Suburban's assertion made at oral argument of this appeal that the orders were improperly entered under the interrogatory rule misses the mark entirely. It is an argument that attempts to place form over substance and overlooks the court-ordered requirement, on Glass's application, for an expert report by a fixed time so that Glass could have an opportunity to prepare for trial and respond. Moreover, it is unfair to a plaintiff to be interminably delayed in presenting a case because of dilatory tactics of a party. Here, there was clear prejudice to Glass.
We also observe that there was no basis demonstrated in the general allegations of the counterclaim for a claim of attorney malpractice.[5] Nor do we accept Suburban's argument that any alleged delinquency in providing discovery by Glass prevented Suburban from obtaining an expert report. In the first place, it is improper to assert a claim without any factual basis for that claim, particularly a malpractice claim. That thesis is implicitly recognized in the affidavit of merit statute even if it does not apply here. See N.J.S.A 2A:53A-26 to -29; see also Cornblatt v. Barow, 153 N.J. 218, 708 A.2d 401 (1998).
It has long been established that pleadings reciting mere conclusions without facts and reliance on subsequent discovery do not justify a lawsuit. See Gruccio v. Baxter, 135 N.J.Super. 290, 294-295, 343 A.2d 145 (Law Div.1975); see also Korostynski v. Division of Gaming Enforcement, 266 N.J.Super. 549, 559, 630 A.2d 342 (App.Div. 1993) (In wrongful termination suit, appellate court stated that "plaintiff's discovery request amounts to little more than a fishing expedition."). Moreover, in attorney malpractice cases "plaintiffs must allege particular facts in support of their claim of attorney incompetence and may not litigate complaints containing mere generalized assertions of malpractice." Ziegelheim v. Apollo, 128 N.J. 250, 267, 607 A.2d 1298 (1992).
Nor do we find the situation in this case comparable to cases such as Jansson v. Fairleigh Dickinson University, 198 N.J.Super. 190, 195-197, 486 A.2d 920 (App.Div. 1985), where the failure of an attorney to submit factual answers to interrogatories was not visited upon an unsuspecting client. Here, we are talking about a vague, non-particularized claim of legal malpractice which was asserted on behalf of counterclaimant-Suburban in their pleadings apparently more as a defense to Glass's claim for attorneys' fees than any reference to acts of malpractice. Such a defense, although now apparently obligatory whenever an attorney sues for a fee, had to have had some basis known to the client or discussed with the new attorney before filing such a counterclaim of attorney malpractice against their former attorney. Certainly any basic and essential facts known to the client about possible attorney malpractice should have been communicated by the client to the new attorney early on in the litigation so as to readily be the subject of a required expert's report. Indeed, from the record before us, it appears *949 it was some time long after suit was instituted and the counterclaim asserted that Suburban authorized its then attorney to get an expert report.[6] We accept that as the case, but whether or not it is the case, there is no warrant in this case to disturb Judge Guida's exercise of discretion in the dismissal of the counterclaim with prejudice. See Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 346, 476 A.2d 250 (1984); R. 4:37-3.
As for the denial of Suburban's motion for a new trial, there was sufficient credible evidence in the record to support the jury's verdict on Glass's complaint. Popow v. Wink Associates, 269 N.J.Super. 518, 531, 636 A.2d 74 (App.Div.1993); Pickett v. Lloyds, 252 N.J.Super. 477, 490, 600 A.2d 148 (App.Div. 1991), aff'd, 131 N.J. 457, 621 A.2d 445 (1993).
Affirmed.
NOTES
[1] Markovic was a personal guarantor as well as president and sole stockholder of Suburban.
[2] Glass had previously given Suburban notice of their right to pursue fee arbitration. That remedy was apparently not pursued by Suburban.
[3] Suburban's objections to such consultation are misplaced. Such consultations are appropriate as a practical matter and under the Code of Judicial Conduct. The comment to Canon 3 specifically states that the proscription against communications concerning a proceeding: "It does not preclude a judge from consulting with other judges, or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities." Moreover, there was no special knowledge of the situation possessed by Judge Simon as to the expert report requirements that could not readily have been gleaned from the record.
[4] As we have noted in other cases, the reconsideration rule has been often abused, see Cummings v. Bahr, supra (295 N.J.Super. at 384, 685 A.2d 60); Polidori v. Kordys, Puzio & DiTomasso, 228 N.J.Super. 387, 394-395, 549 A.2d 1254 (App.Div.1988); Michel v. Michel, 210 N.J.Super. 218, 220-221, 509 A.2d 301 (Ch.Div.1985), as appears here.
[5] The malpractice counterclaim recited in one numbered paragraph of the first count:

The Plaintiff in performing legal services for Defendant Suburban did not do all that she represented that she either was going to do or that she was capable of doing. As a result thereof, the Defendant Suburban sustained a loss by being either not represented or under-represented in various legal proceedings.
The second count of Suburban's counterclaim rejected that allegation in the first numbered paragraph asserting, after it had denied in its answer most of the complaint's allegations about Glass furnishing legal services at agreed rates, that:
There existed either a contract or a written contract between the Plaintiff and Suburban. Said agreement called for the Plaintiff to render legal services for which she was paid. Notwithstanding the fact that she was paid for her services, she failed to perform certain of these services to the detriment of Suburban.
[6] The attorneys appearing for Suburban at oral argument of this appeal were substituted as attorneys just three days before the argument date.