**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1149-21

ORSOLYA CSAK,

    Plaintiff-Appellant,

v.

ATTILA KUCZORA,

    Defendant-Respondent.

_____

        Submitted October 17, 2022 — Decided October 28, 2022

        Before Judges Mawla and Smith.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FD-02-0287-15.

        Snyder Sarno D'Aniello Maceri & Da Costa, LLC, attorneys for appellant (Stacey A. Cozewith, of counsel and on the brief; Lydia Latona, on the brief).

        Respondent has not filed a brief.

PER CURIAM

Plaintiff Orsolya Csak appeals from an October 21, 2021 order granting defendant Attila Kuczora primary residential custody of the parties' seven- and nine-year-old children. Plaintiff also appeals from a December 10, 2021 denying her motion for reconsideration. We affirm.

On February 8, 2016, the parties, through counsel, entered a consent order, which designated plaintiff the parent of primary residence and defendant the parent of alternate residence, granted the parties joint legal custody, and granted defendant parenting time. Relevant to the issues raised on this appeal, the parties agreed, in the event they could not resolve future custody or parenting time issues through mediation, they would "have the right to request the appointment of . . . a joint custodial/parenting time expert and conduct a best interest[s] evaluation." They also agreed "no change of circumstances must be shown to commence the review and the evaluator shall review custody de novo to determine what is in the children's best interest." If either party disagreed with the joint expert's recommendation that party could retain their own expert, and "[t]he dissatisfied party shall have the burden of filing an application with the [c]ourt to contest the recommendation. . . . Both parties shall fully participate and comply with all of [the joint expert]'s recommendations, requests and timelines."

2

In December 2017, the parties retained a joint expert who issued a report in September 2018. Defendant disagreed with the report's recommendation and retained his own expert, but the expert had difficulty gaining plaintiff's cooperation. As a result, the parties returned to court, which entered a March 12, 2019 order, stating: "Plaintiff is best advised to cooperate with defendant's best interest[s] evaluation[.] If plaintiff refuses, then [the] court may be in a position to draw appropriate inferences." On June 18, 2009, the court entered another order memorializing that the parties shall cooperate with defendant's expert in the evaluation process.

In September 2020, defendant filed an order to show cause to transfer custody and enforce plaintiff's obligation to comply with his expert's evaluation. The judge denied the transfer of custody and compelled plaintiff's compliance with the evaluation. The matter returned to court, and the judge entered an order on May 25, 2021, which noted the appearance of counsel for both parties, and scheduled a plenary hearing. In July 2021, the court held a conference and plaintiff's counsel advised plaintiff had retained a custody expert but argued the procedural posture of the case was improper because defendant had not formally moved to challenge the joint expert's findings, as required by the parties' consent order. The judge rejected counsel's argument because it elevated "form over

A-1149-21

substance[,]" noting defendant had requested a change of custody, each party had retained an expert, and the case was ready for trial.

The matter was tried in six days, spanning three months. Defendant testified and called four witnesses, including plaintiff, defendant's expert, defendant's wife, and a parenting time supervisor. Plaintiff, who was self-represented at trial, called her expert as the sole witness in her case-in-chief. The judge also considered thirty-three exhibits admitted into evidence.

The trial judge found defendant, his expert, defendant's wife, and the parenting time supervisor credible. However, he found plaintiff and her expert not credible. He noted plaintiff's expert "failed to apply the best interest[s] standard to his report[,] . . . failed to contact . . . defendant's collateral contacts[,] . . . his report was not complete[,] and his testimony was based on [an incomplete] set or analysis of the facts." Plaintiff's expert "selectively guarded data . . . to place plaintiff in the best possible light." Rather than analyze the N.J.S.A. 9:2-4(c) factors, the expert "focused on the bonding of . . . plaintiff only and utilized . . . the rejected standard of the [tender] years doctrine where he testified that the [plaintiff] breast-fed the children and . . . his quote was 'if it's not broke, don't fix it,' and he made unsupportable gender assumptions . . . ."

The judge also noted the expert contradicted himself; finding a bond between the children and defendant and then opining the opposite.

Addressing the procedural history of the case, the trial judge noted "[t]he catalyst for the plenary hearing was" defendant's September 2020 order to show cause, which sought custody. The judge cited the prior history of the case, including the March 2019 order and "multiple case management conferences" held to gain plaintiff's cooperation with the custody evaluation. He noted neither party objected to the court's directive that there would be a trial if the parties did not agree to the joint expert's recommendation. Further, neither objected when the court issued the May 2021 order scheduling the plenary hearing and plaintiff secured her own expert.

Before addressing the statutory factors, the judge recounted the parties had contracted for a de novo review of custody. The judge found defendant proved it was in the children's best interests to reside with him and awarded plaintiff the parenting time. On the other hand, there was no evidence supporting plaintiff's opposition to defendant having custody on grounds of alleged: Domestic violence in the parties' relationship; defendant's questionable immigration status; and his criminal history, religious beliefs, and threats to abscond with the children to another country. Rather, the judge credited the

5

psychological testing performed by defendant's expert, whose "results are clear that harm is befalling the children . . . due to . . . plaintiff's conduct, which will manifest later in their lives if not addressed."

The trial judge analyzed the N.J.S.A. 9:2-4(c) factors. He found plaintiff struggled to communicate, agree, and cooperate with defendant, and had a history of unwillingness to allow parenting time. "Transferring primary custody of the children to . . . defendant would ensure . . . there is proper communication between the parties and allow for a stable line of communication to flourish. This would lead to less finger-pointing, allegations, and ensure the children's best interests are not overlooked." The judge found plaintiff prevented parenting time by making false claims of domestic violence and denying defendant make up parenting time. The evidence showed "defendant is more likely . . . and more able to support . . . plaintiff's parenting time than the other way around. . . . Creating false narratives of either party is incredibly damaging to the children."

The trial judge found defendant had a more stable home environment, having: Lived in the same home since 2014; flexible work hours; worked within walking distance of his home; and could be present for the children. The judge also credited defendant's wife's testimony, which he found proved they had "the ability to make a consistent home where they are fed, clothed, and cared for on

6

a regular basis." Conversely, plaintiff moved frequently between several states, had several jobs, and planned to attend law school, which would occupy most of her time. The stability of the home environment would "allow for continuity of [the children's] schooling and . . . afford [them] the best opportunity at economic and social success."

The judge found the older child expressed a preference to plaintiff's expert to see defendant and live closer to him. Although plaintiff resided in New Jersey and defendant in Florida, the judge noted plaintiff recently owned real estate in Florida and the father of a child she shared from a different relationship consented to a move to Florida. Plaintiff's expert failed to mention this fact in his report and "[p]laintiff . . . offered little or no evidence that [it] would be in the [children's] best interest[s] that the custody remain . . . with her in New Jersey."

Reviewing "the extensive data" provided by defendant's expert, the judge concluded "plaintiff has a history of acting in a fashion which creates an adverse impact on the children and compromises their long-term psychological and social development." Although plaintiff was "fit in terms of basic needs, . . . [she] is not fit to cooperate and co-parent with defendant, . . . which is a critical factor . . . to foster a positive environment for the children to grow in."

7

Plaintiff filed a reconsideration motion arguing: 1) defendant's counsel should have been disqualified because plaintiff consulted with an attorney from counsel's office; 2) the court lacked jurisdiction to try the case because the consent order required the parties to attend mediation; 3) the court erred by failing to appoint a guardian ad litem for the children; 4) the judge could not make credibility findings regarding plaintiff because she did not testify; 5) the court improperly denied plaintiff's request to call the joint expert as a witness; 6) defendant's September 2020 order to show cause did not seek a plenary hearing and a trial should never have occurred; and, 7) the judge decided the case based on stale evidence.

The trial judge denied the motion as without merit. He rejected plaintiff's argument she did not testify, noting she provided testimony as a witness in defendant's case and chose not to testify in her case-in-chief. The judge found the evidence presented with plaintiff's reconsideration motion was not presented at trial, although it was available during trial, and the court could not consider new arguments. Further, plaintiff was estopped from challenging the court's jurisdiction and the alleged conflict of interest because she raised neither claim at trial. The judge found the motion was an attempt to reargue the evidence presented at trial and an improper attempt at "another bite at the apple."

A-1149-21

The trial judge rejected plaintiff's argument regarding the guardian ad litem, noting no such request was made. Moreover, the decision to appoint one is discretionary, and "in this case, the best interests were addressed by the . . . experts, . . . [t]he [c]ourt did not feel that a guardian ad litem was necessary," and plaintiff presented no evidence warranting such an appointment.

Plaintiff raises the following arguments on appeal:

> POINT I. THE TRIAL COURT FAILED ITS DUTY TO PREVENT OR INFORM PLAINTIFF OF PROCEDURAL IRREGULARITIES AND CONSEQUENCES RELATIVE TO HER FUNDAMENTAL RIGHTS.
>
> POINT II. THE TRIAL COURT FAILED TO PROTECT THE BEST INTERESTS OF THE CHILDREN BY INSURING THAT BOTH PARENTS HAD THE ABILITY TO PRESENT THEIR CASE IN FULL.
>
> POINT III. THE TRIAL COURT ERRED IN FAILING TO ENFORCE THE PARTIES' CONSENT ORDER AND NOT ALLOWING [THE JOINT EXPERT] TO BE CALLED AS A WITNESS.
>
> POINT IV. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT INTERVIEWING THE CHILDREN OR APPOINTING COUNSEL FOR THE CHILDREN UNDER [RULE] 5:8A WHERE PLAINTIFF PROCEEDED PRO SE AND CONSIDERING THE ABSENCE OF EVIDENCE PRESENTED AS TO THE CUSTODY FACTORS.

A-1149-21

POINT V. THE TRIAL COURT ERRED IN RENDERING A CUSTODY DETERMINATION WITHOUT MAKING COMPREHENSIVE FINDINGS AS TO ALL OF THE STATUTORY FACTORS AND ERRED IN RELYING ON AN EXPERT THAT DID NOT EVEN MAKE A FINDING ABOUT WHAT WOULD HAPPEN IF THE PARTIES DID NOT LIVE IN THE SAME STATE WHEN THEY DID NOT RESIDE IN THE SAME STATE AT THE TIME OF THE ISSUANCE OF THAT EXPERT'S REPORT.

## I.

An appellate court's scope of review of the Family Part's factfinding is limited. N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012). Factual findings "are binding on appeal when supported by adequate, substantial, credible evidence." O'Connor v. O'Connor, 349 N.J. Super. 381, 400 (App. Div. 2002) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding[]" and the conclusions which flow logically from those findings of fact. Cesare, 154 N.J. at 413. "Although we defer to the trial court's findings of fact, especially when credibility determinations are involved, we do not defer on questions of law." N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super.

320, 330 (App. Div. 2011) (citing N.J. Div. of Youth & Fam. Servs. v. R.L., 388 N.J. Super. 81, 88-89 (App. Div. 2006)).

We review the denial of a reconsideration motion for an abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). "A motion for reconsideration is designed to seek review of an order based on the evidence before the court on the initial [instance], . . . not to serve as a vehicle to introduce new evidence to cure an inadequacy in the . . . record." Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

A.

In Points I, II, and III of her brief, plaintiff asserts several alleged errors regarding the conduct of the trial. She argues the trial court should have informed her of the consequences for failing to: Present direct testimony on her own behalf; effectively cross examine defendant and his expert; and present "evidence to properly impact the credibility determinations of the trial court." Citing Luedtke v. Shobert, 342 N.J. Super. 202, 214 (App. Div. 2001), plaintiff claims her self-represented status affected the outcome because she was unable to call the joint expert. She argues the procedural irregularities require a reversal, namely, the court's failure to order mediation and require defendant to file a formal motion contesting the joint expert's report prior to trial.

A-1149-21

A party's "status as a pro se litigant in no way relieves her of her obligation to comply with . . . court rules . . . ." Venner v. Allstate, 306 N.J. Super. 106, 110 (App. Div. 1997). A litigant who represents themselves is "presumed to know, and [is] required to follow, the statutory law of this State." Tuckey v. Harleysville Ins. Co., 236 N.J. Super. 221, 224 (App. Div. 1989). However, it is "fundamental that the court system is obliged to protect the procedural rights of all litigants and to accord procedural due process to all litigants." Rubin v. Rubin, 188 N.J. Super. 155, 159 (App. Div. 1982).

In Luedtke, we reversed a custody determination because the trial court did not afford the parties the opportunity to review the expert reports until the day of trial and decided the matter without affording the parties the ability to examine the experts. 342 N.J. Super. at 215-16. We also reversed because the court performed an incomplete analysis of the statutory factors. Id. at 218.

A thorough review of the record convinces us plaintiff's contentions lack merit. Indeed, plaintiff gave an opening statement, made and successfully argued testimonial and documentary evidentiary objections, cross-examined and re-cross-examined fact and expert witnesses[1] using documents and other

---

[1] Plaintiff's cross-examination of defendant's expert spanned two days, which does not convince us the trial judge was impatient or that plaintiff was rushed through the proceedings.

evidence, voir dired defendant's expert and qualified her own expert, and argued in limine motions. The trial judge repeatedly guided plaintiff regarding how to conduct the hearing, explained the rules of evidence including witness impeachment and credibility, and gave her the time to examine witnesses, including granting her request to end a trial day early to prepare her cross-examination of defendant's expert the following morning. When plaintiff stated she felt ill, the judge offered to adjourn trial until she recuperated. We are unconvinced plaintiff was unable to present her case and there was ample testimony and documentary evidence adduced for the judge to evaluate credibility and decide the matter.

Luedtke is inapplicable because the parties here had expert reports in advance of trial and were permitted to cross-examine the experts, plaintiff jettisoned her counsel well before trial, and informed the court she was proceeding without counsel. Moreover, although in Luedtke we held the trial court erred by permitting the defendant's counsel to withdraw on the eve of trial without a formal motion, id. at 212, the procedural irregularities in that case were exclusive to the fact the defendant was self-represented and dissimilar to the arguments raised here.

Plaintiff's argument the trial judge committed a procedural violation by not requiring defendant to file a formal motion objecting to the joint expert's findings, is, as the trial judge said at the pretrial conference, elevating form over substance. The record of the pre-trial proceedings clearly showed defendant objected to the joint expert's findings, retained his own expert, who for months had been attempting to meet with plaintiff to complete his evaluation, and that a hearing was necessary to decide custody. None of this was a surprise to plaintiff or inconsistent with the intent of the parties' consent order to evaluate custody de novo in the event the parties could not agree.

We also discern no error regarding the failure of the joint expert to testify. Plaintiff named the joint expert as a potential witness in correspondence to the court, but never listed the expert on her witness list. Regardless, at the conclusion of the second day of trial, the judge advised plaintiff she would have to subpoena the joint expert to testify if she wanted to adduce evidence from them. Plaintiff never subpoenaed the joint expert, despite the trial continuing for four more days and summations occurring less than two months later.

B.

In Point IV, plaintiff argues the court should have interviewed the children or appointed counsel for them. We are unpersuaded.

14

Rule 5:8-6 permits the court to interview children in a custody dispute at the request of a party or on the court's own motion. If the court declines to interview a child pursuant to a party's request, it must put its reasons on the record. The trial judge did not err, because neither party requested a child interview. Moreover, we are unconvinced the custody decision suffered because the judge did not conduct an interview. Indeed, the judge made findings regarding the older child's preferences, which favored a custody award to defendant, and the record lacks objective evidence the younger child held a different view or that an interview would yield a different custody result.

We reach the same conclusion regarding plaintiff's assertion counsel should have been appointed for the children. Again, neither party made such a request, and the facts did not support the appointment of counsel on the court's own motion. See R. 5:8A.

## C.

In Point V, plaintiff challenges the sufficiency of the trial judge's analysis of the N.J.S.A. 9:2-4(c) factors. She asserts the court decided the case based "on significant voids of evidence and factual errors that ultimately effected its decision regarding custody and parenting time . . . made scant findings of facts[,]" and did not consider all of the statutory factors. Plaintiff argues the

judge "regurgitated the findings" of defendant's expert, who did not opine "as to custody and parenting time if [p]laintiff did not move to Florida."

Plaintiff's assertion the trial judge did not address the statutory factors lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). A thorough review of the record shows the judge addressed each of the N.J.S.A. 9:2-4(c) factors and made findings regarding those, which favored an award of custody to defendant, the factors in equipoise, and the factors which were inapplicable or had no effect on the decision.

Finally, the trial judge did more than adopt defendant's expert opinion. Notwithstanding the substantial deficiencies in plaintiff's expert opinion, the record demonstrates the judge considered both opinions. Despite finding defendant's expert more credible, the judge extracted some of his findings from evidence contained in plaintiff's expert report, showing he parsed the evidence. The fact defendant's expert did not render an opinion regarding what would happen if plaintiff did not move to Florida was neither fatal to the expert's opinion nor the judge's decision, because the totality of the evidence supported an award of primary residential custody to defendant, regardless of plaintiff's residence.

The findings relating to the custody award and denial of reconsideration were supported by adequate, substantial, credible evidence. The trial judge did not abuse his discretion and we discern no reversible error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1149-21