**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1370-20

1707 REALTY, LLC,

     Plaintiff-Appellant,

v.

REVOLUTION ARCHITECTURE,
LLC, CONRAD RONCATI, R.A.,
ARCHITECTURA, INC.,
JOHNSON SOILS COMPANY,
LISA V. MAHLE-GRECO, P.E.,
BERTIN ENGINEERING
ASSOCIATES, INC., and
CALSISTO BERTIN, P.E.,

     Defendants-Respondents.

_____

REVOLUTION ARCHITECTURE,
LLC, CONRAD RONCATI, R.A.,
and ARCHITECTURA, INC.,

     Defendants/Third-Party
     Plaintiffs,

v.

ULTRA GENERAL
CONTRACTING CORP., ULTRA

GENERAL CONTRACTING, INC.,
d/b/a ULTRA GENERAL
CONTRACTING ENTERPRISES,
INC., and ULTRA ENTERPRISES,
LLC, d/b/a ULTRA GENERAL
CONSTRUCTION ENTERPRISES,
INC.,

      Third-Party Defendants-
      Respondents,

and

STALWART CONSTRUCTION,
LLC, STALWART
CONSTRUCTION, INC.,
STALWART CONSTRUCTION
GROUP, INC., and GREGORY
FASSANO, LLC,

      Third-Party Defendants.
_____

JOHNSON SOILS COMPANY,
LISA V. MAHLE-GRECO, and
CALSISTO BERTIN, P.E.,

      Defendants/Third-Party
      Plaintiffs,

v.

STALWART CONSTRUCTION,
LLC, STALWART
CONSTRUCTION, INC.,
STALWART CONSTRUCTION
GROUP, INC., ULTRA GENERAL
CONTRACTING CORP., ULTRA

GENERAL CONTRACTING, INC., d/b/a ULTRA GENERAL CONTRACTING ENTERPRISES, INC., ULTRA ENTERPRISES, LLC, d/b/a ULTRA GENERAL CONSTRUCTION ENTERPRISES, INC., GREENFIELD CONSTRUCTION GROUP, GREGORY FASSANO, LLC, MARCH ASSOCIATES, INC., and PETILLO INCORPORATED,

       Third-Party Defendants,

and

ROY ROCK, LLC,

       Third-Party Defendant-
       Respondent.

_____

BERTIN ENGINEERING ASSOCIATES, INC., and CALISTO BERTIN, P.E.,

       Defendants/Third-Party
       Plaintiffs,

v.

STALWART CONSTRUCTION, LLC, STALWART CONSTRUCTION GROUP, INC., individually and d/b/a STALWART CONSTRUCTION, LLC, ULTRA GENERAL CONTRACTING CORP., ULTRA GENERAL

A-1370-20

CONTRACTING INC., d/b/a
ULTRA GENERAL
CONTRACTING ENTERPRISES,
INC., ULTRA ENTERPRISES
LLC, d/b/a ULTRA GENERAL
CONSTRUCTION ENTERPRISES,
INC.,

     Third-Party Defendants.

_____

Argued February 9, 2022 – Decided July 19, 2022

Before Judges Hoffman, Whipple, and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2202-17.

Leonard E. Seaman argued the cause for appellant 1707 Realty, LLC (The Law Offices of Richard Malagiere, PC, attorneys; Richard Malagiere, of counsel; Leonard E. Seaman, of counsel and on the briefs).

Robyn S. Rubin argued the cause for respondents Revolution Architecture, LLC, Conrad Roncati, R.A. and Architectura, Inc. (Milber Markris Plousadis & Seiden, LLP, attorneys; Robyn S. Rubin, on the brief).

Jill A. Mucerino argued the cause for respondents Johnson Soils Company, Lisa V. Mahle-Greco, P.E., and Calisto Bertin, P.E., i/p/a Calsisto Bertin, P.E. (Wood Smith Henning & Berman, LLP, attorneys; Jill A. Mucerino, on the brief).

Michael J. Jubanyik argued the cause for respondents Bertin Engineering Associates, Inc., and Calisto Bertin, P.E. (Reilly, McDevitt & Henrich, PC, attorneys;

Michael J. Jubanyik and Christine J. Viggiano, on the brief).

PER CURIAM

Plaintiff 1707 Realty, LLC (1707 Realty) appeals from November 20, 2020 Law Division orders dismissing with prejudice its complaint against defendants on the basis of the entire controversy doctrine and Rule 4:5-1(b)(2). Plaintiff also appeals from a January 12, 2021 order denying reconsideration. For the reasons that follow, we affirm.

I.

We ascertain the following facts from the record. Plaintiff, a New Jersey limited liability company, was established by its principals, Moshe Winer and Martin Taub, to develop the Fairfield Marriott Inn Hotel (the Project) in North Bergen. Tal Winer is 1707 Realty's Vice President.

As the result of construction defects at the Project, on March 24, 2017, plaintiff filed its complaint in the matter under review, naming the following parties as defendants: JSC, a New Jersey corporation that performs geotechnical and special inspection services, including third-party inspections of concrete and rebar; Lisa V. Mahle-Greco, P.E., a professional engineer in the State of New Jersey and employee of JSC; Calisto Bertin, P.E., a professional engineer in the State of New Jersey and principal of JSC and Bertin Engineering Associates,

Inc.; Bertin Engineering Associates, Inc., a New Jersey corporation that provides civil engineering services; and Conrad Roncati, R.A., a registered architect in the State of New Jersey and principal of defendants Revolution Architecture LLC and Architectura, Inc.

Despite initiating this action for construction defects, plaintiff did not name its initial general contractor, Stalwart Construction LLC (Stalwart), or its owner and president, Vincent DiGregorio, as defendants. Both Stalwart and its subcontractor, Ultra General Contracting Corp. (Ultra), are named as third-party defendants in the matter under review; however, only Ultra appeared as Stalwart defaulted.

The Project

In April 2014, plaintiff entered into an agreement with Stalwart, as general contractor, to perform site work at the Project. Shortly thereafter, Stalwart commenced work. In September 2014, JSC began performing inspections of Stalwart's work.

On September 12, 2014, plaintiff entered into an agreement with Stalwart for the construction of a seven-story, 100-room hotel structure (the Tower) at the Project. Stalwart began work on the Tower on December 17, 2014.

A-1370-20

In April 2015, plaintiff retained Bryan Sullivan of PTC Consultants to serve as the owner's representative for the Project. Sullivan was responsible for the day-to-day management of the Project. Sullivan oversaw the progress of the Project and the status of its completion.

In May 2015, Sullivan assessed the quality of the work and alerted plaintiff regarding defects in the construction of the Project. The defects identified by Sullivan related to both site work and work on the Tower. Around the same time, plaintiff became aware of alleged deficiencies with respect to JSC's inspections.

Sullivan was the person most knowledgeable about the defects at the Project. According to plaintiff, Sullivan was the primary individual responsible for noting and documenting the allegedly defective conditions. Although unsure of its existence, plaintiff's principal, Moshe Winer, testified to never seeing a formal report prepared by Sullivan regarding the defective conditions.

By May 2015, Sullivan determined that Stalwart was not acting in compliance with its contracts. As a result, on May 22, 2015, plaintiff issued a Notice of Non-Compliance [w]ith Contract to Stalwart. The notice stated, in part, that Stalwart failed to provide "standard protocol for Code[-]required controlled inspections, scheduling, and on-site or office inspection," which was

7

central to JSC's involvement with the Project. Thereafter, Stalwart began performing remedial work under the supervision and guidance of Sullivan.

On September 28, 2015, plaintiff issued a Notice of Default to Stalwart on the Tower contract. The Notice of Default stated that Stalwart failed "to construct the project in accordance with industry standards[,] including but not limited to[,] local building codes, in particular numerous failure[s] in the placement of rebar and the pouring of concrete which required and continues to require extensive remediation." Shortly thereafter, on October 7, 2015, plaintiff terminated Stalwart's contracts for cause. At the time of Stalwart's termination, the Project was partially completed, up to the second floor.

After Stalwart's termination in October 2015, March Associates Construction, Inc. (March) replaced Stalwart at the Project. Sullivan prepared March's scopes of work for both remedial work and for remaining and incomplete work. According to plaintiff, no remedial work was done without Sullivan's knowledge.

By August 15, 2017, the Project had been remediated and the North Bergen Building Department issued a certificate of occupancy. Plaintiff credits Sullivan with having "saved the project." Notably, plaintiff failed to put the

A-1370-20

defendants on notice of its claims against them prior to March remediating and completing the Project.

One day later, on August 16, plaintiff issued summonses to defendants in this matter. After receiving a copy of the complaint, defendant Calisto Bertin left the following voicemail for Sullivan:

> Bryan this is Calisto. You've probably getting a call from Conrad too, but I got a gift which I f\*\*king didn't expect, and I have never done this before, but I am going to f\*\*k this job as best I can. I am gonna go down, and I am going to use all my influence to f\*\*k this job. Maybe if someone wants to call me and explain what all this about, we can do something about it, but right now. . . . Not you, your employer created a f\*\*kin' enemy. Bye.

Claims Based on Sullivan's Work Product

Plaintiff's allegations as to both the claimed defects and damages are based upon information supplied by Sullivan. Specifically, plaintiff's identification of defects, remedial work, and its calculation of damages are based upon information included in a "change order log" prepared by Sullivan. Moreover, plaintiff admitted that its calculation of damages is not based upon the personal knowledge of its principals or its own documents, but rather, upon the records of Bryan Sullivan.

The following exchange occurred at the deposition of Tal Winer:

9

Q: Okay. Could you tell me, as you sit here today, where those numbers come from and what work is reflected and included in the remediation costs and the change orders for remediation work?

A: Yes. I believe all of Mr. Sullivan's records were provided in -- in -- at the site. The paper records, I believe we provided as whatever digital records we had of his. And I remember, this was from -- he would keep meticulous spreadsheets of all the change orders. He would have his notes, he had many columns of notes. He would label them and categorize them with the values. So I mean, I am sure you have seen his records and we produce a lot of records.

Q: So what I am asking you, though, is there a document where Mr. Sullivan identified $340,295 for change orders for additional remediation work? Where did the number come from, I guess, is what I would like to know?

A: So I believe he had -- he had at least a couple of spreadsheets for change orders, one for the site work, one for the tower contract, huge spreadsheets where he labeled the change order based on the proposed change order number, the -- . . . And he would say whether or not it was remedial in nature and he would describe what the change order was about. So that's where we got those numbers.

Since Winer did not personally create the document, he testified regarding his review of the change order log, stating, "[T]o the best of my abilities, in good faith, I tried to figure out what was remedial in nature."

A-1370-20

The claimed defects were not identified with specificity until June 18, 2020, at which time plaintiff produced its expert witness reports authored by Thornton Tomasetti, Inc. and Christopher Ling, AIA. Both Ling and Tomasetti opined as to defects pertaining to concrete and rebar installed by Stalwart. Plaintiff's experts did not undertake first-hand observations of work progress, the defective conditions, or the remedial efforts.

In addition to opining as to Stalwart's defective work, both Ling and Tomasetti offered opinions as to the approval of payment applications for "work that either was not completed at all or was incomplete." Plaintiff specifically claims it suffered damages due to the improper approval of incomplete work for payment, as set forth in Payment Application Requisition No. 8. This claim is based upon an analysis undertaken by Sullivan.

Claimed Damages

In addition to establishing liability, the damages claimed by plaintiff are also based upon information supplied by Sullivan, which plaintiff's experts used in calculating plaintiff's damages totaling $4,005,731, including costs caused by delay of construction, overpayment, and remediating defective construction. In support of the damages sought in this litigation, plaintiff retained Robert Valentin Consulting (Valentin) as an expert, which issued a report dated

11

February 17, 2020 (the Valentin Report). Plaintiff submitted the Valentin Report to support the recovery of "costs incurred due to overpayments, deficient installation[,] and delays," which allegedly total $1,653,754.46. The Valentin Report opines defendants are responsible for the claimed costs due to their failure to identify Stalwart's deficient installation for which Stalwart was overpaid.

Engineered Devices Litigation

On November 13, 2015, while the Project was ongoing, Engineered Devices Corporation initiated a legal action against 1707 Realty and Stalwart in the Superior Court of New Jersey, Hudson County to recover on a construction lien claim. Engineered Devices Corporation v. 1707 Realty LLC, No. L-4673-15 (the Engineered Devices Litigation). On February 11, 2016, plaintiff filed crossclaims against Stalwart and DiGregorio.

The Facts Common to All Counts, as stated in plaintiff's crossclaim, provided, in pertinent part:

> (2) Stalwart failed to supply sufficient properly skilled workers or proper materials or equipment to complete the project . . .
>
> (3) By letter dated September 28, 2015, 1707 provided Stalwart with a Notice of Default and opportunity to cure.

. . . .

(6) As a result of Stalwart's failure to cure the default, on or about October 8, 2015, 1707 terminated the Contract for cause . . .

(7) Prior to termination of the Contract, Stalwart submitted, on a periodic basis, Application and Certification for Payment ("Payment Applications") to 1707 signed by DiGregorio as a condition to get progress payments.

(8) DiGregorio certified to 1707 in the Payment Applications that the work . . . was completed in accordance with the Contract Documents . . .

(9) At the time DiGregorio made these certifications . . . the work . . . was not completed in accordance with the Contract Documents.

Count One of plaintiff's crossclaim was against DiGregorio for fraud relating to payment applications submitted for the Project, in his capacity as Stalwart's representative. Count Three was against Stalwart for breach of contract for its failure and refusal to provide plaintiff sufficient properly skilled workers or proper materials at the Project. Relevant to the matter under review, plaintiff alleged defective work product and "numerous construction defects" against Stalwart.

In accordance with the Rule 4:5-1, plaintiff's attorney filed a certification with plaintiff's crossclaim, stating:

13

I further certify pursuant to [Rule] 4:5-1 that the matter in controversy is not the subject matter of any other action pending in any Court or of a pending arbitration proceeding . . . I further certify that to the best of my knowledge, information and belief, no other party should be joined in this action.

On May 19, 2016, plaintiff filed a motion for leave to file a third-party complaint against Ultra and Gregory Fassano, LLC d/b/a "Global Group" (Global) in the Engineered Devices Litigation. In a supporting certification, plaintiff's attorney stated that "1707 [Realty] seeks to recover from Global and Ultra for damage to the property." He further certified that "1707 [Realty's] claims against Global and Ultra should be included as part of the matters in controversy to allow a full and complete resolution of all claims in one forum."

After receiving leave of court, plaintiff filed a third-party complaint against Ultra and Global in the Engineered Devices Litigation in June 2016. Plaintiff alleged that Ultra and Global each entered into a subcontract with Stalwart to provide labor and materials within the concrete scope of work in the construction of the Project. Plaintiff further alleged that Ultra and Global each "failed to construct the project in accordance with industry standards[,] including but not limited to[,] local building codes" and that their failure "required and continue to require extensive remediation by 1707 to portions of the project." Moreover, plaintiff alleged that "[t]he negligence, carelessness, or

14

recklessness" of Ultra and Global were the "proximate cause of damages suffered by 1707." Plaintiff's attorney filed a certification attached to plaintiff's third-party complaint, stating:

> I certify pursuant to [Rule] 4:5-1 that the matter in controversy is not the subject matter of any other action pending in any Court or of a pending arbitration proceeding . . . I further certify that to the best of my knowledge, information and belief, no other party should be joined in this action.

Judgment in the Engineered Devices Litigation

On January 25, 2017, an Order for Final Judgment (the DiGregorio Judgment) was entered against Vincent DiGregorio as to plaintiff's crossclaim for fraud in the amount of $681,506 in the Engineered Devices Litigation. Plaintiff's calculation of the DiGregorio Judgment included consideration of overpayment made to Stalwart, as well as damages incurred by plaintiff with respect to remedial work at the Project.

Plaintiff's representative, Moshe Winer, testified at deposition in this matter as follows:

> Q:  Why did you decide that your options were better pursuing the design professionals in this litigation  for at least some of the same damages that you  already have a judgment for in another litigation?
>
> A:  That's what you call double dipping, that's what you  --

Q: No, I am not. I am asking you why you made that determination, to pursue a judgment on the same grounds, at least in part, against design professionals in this litigation when you already had a judgment for those damages in another litigation?

A: Look, I . . . hired professionals and I have to take responsibility for who I hired. I believe I hired . . . a good team and that's the advice I got and that's what I did . . . . We chose not to sue Stalwart for negligence or for breach of contract, because we realized it's a sham and there's nothing there, there's no asset to recover . . . from Stalwart. Again, it was a business decision.

The Present Action

Before the Project had been completed and fully remediated, plaintiff initiated the matter under review by filing a complaint in Bergen County on March 24, 2017. However, plaintiff did not serve the complaint until August 22, 2017, after the certificate of occupancy for the Project was issued; as a result, defendants were unaware of the claims pending against them until that time. In its complaint, plaintiff alleged that JSC entered into an agreement to provide construction testing and monitoring of certain aspects of the Project, including testing and monitoring of cast-in-place concrete, masonry, and structural steel installations at the Project, and further, that they are liable for defects in the construction of the Project because they "failed to observe and/or failed to

16

require the general contractor to correct various deficiencies in the project." The complaint and subsequent iterations, filed in the form of first, second and third amended complaints, alleged defects in the construction of the footings, stairs, columns, foundation, and use of unacceptable fill.

In October 2017, defendant JSC filed an answer, at which time it asserted an affirmative defense stating: "This claim is barred by the entire controversy doctrine." Defendant Revolution filed an answer to the initial complaint on October 24, 2017, and thereafter filed answers to the first, second and third amended complaints on January 24, 2018, May 24, 2018, and October 30, 2019, respectively. Revolution denied all allegations, including all allegations grounded in negligence, fraud, corruption, or any other intentional tort, and asserted affirmative defenses denying the same.

In November 2017, defendants served discovery demands on plaintiff. Defendant Revolution filed a third-party complaint against Stalwart on January 3, 2018, and thereafter on third-party defendant Ultra. Third-party complaints were also filed by defendants JSC, Lisa V. Mahle-Greco, Calisto Bertin, and Bertin Engineering against Ultra and other subcontractors. Of the named third-party defendants, only Ultra appeared. The named third-party defendants

worked as subcontractors under Stalwart, and were alleged to have performed, in part, the defective and deficient work for which plaintiff claimed damages.

Plaintiff did not serve its answers to interrogatories until May 17, 2018, at which time Sullivan was identified for the first time as a person with knowledge of facts relevant to this case. By that time, he had been deceased for over two months. It was not until two years later – on June 18, 2020 – that plaintiff produced a liability expert report identifying with specificity its claims against defendants.

On September 9, 2020, JSC moved for dismissal of plaintiff's third-amended complaint based upon the entire controversy doctrine and plaintiff's failure to comply with Rule 4:5-1. In sum, the motion sought dismissal of the complaint with prejudice based upon plaintiff's failure to identify or join defendants in the Engineered Devices Litigation. The other co-defendants filed cross-motions to dismiss on the same grounds. On October 6, 2020, plaintiff filed an omnibus opposition to defendants' motions.

On November 20, 2020, the motion judge granted defendants' motions and issued orders dismissing plaintiff's complaint with prejudice based on the entire controversy doctrine and violations of Rule 4:5-1. Plaintiff filed a motion for reconsideration, which the motion judge denied on January 12, 2021.

18

This appeal followed, with plaintiff raising the following arguments:

   I.   THE STANDARD OF REVIEW

   II.   THE BERGEN TRIAL COURT ABUSED ITS
        DISCRETION IN APPLICATION OF RULE
   4:5-  1.

        A.   THE COURT ERRED BY FAILING
             TO CONSIDER THE REASON
             FOR DELAY IN BRINGING THIS
             LITIGATION.

        B.   THE BERGEN COURT ERRED IN
             FINDING THAT DEFENDANTS
             WERE "SUBSTANTIALLY
             PREJUDICED."

        C.   THE BERGEN TRIAL COURT
             ERRED IN FAILING TO
        CONSIDER WHETHER ANY
        LESSER SANCTION WAS
        APPROPRIATE.

   III.   THE BERGEN TRIAL COURT ERRED AS A
         MATTER OF LAW WHEN IT APPLIED RULE
         4:5-1 TO THE ESTABLISHED FACTS.
        A.   THIS IS NOT A "SUBSEQUENT"
             ACTION.

        B.   1707 COMPLIED WITH RULE 4:5-
             1.

   IV.   THE BERGEN TRIAL COURT ERRED IN
         FINDING THAT THE DIGREGORIO
         JUDGMENT PRECLUDES RECOVERY FROM
         DEFENDANTS HERE.

V.   THE BERGEN TRIAL COURT ERRED IN
     FAILING TO CONSIDER THE MATERIALS
     SUPPLIED WITH THE MOTION FOR
     RECONSIDERATION.

II.

We review the grant or denial of a motion to dismiss under the same standards as the trial court.  Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005).  Where the decision being appealed is based on equitable principles, we review the trial court's findings under an abuse of discretion standard.  BOC Group, Inc. v. Chevron Chem. Co., 359 N.J. Super. 135, 145 (App. Div. 2003) (citing Paradise Enters. Ltd. v. Sapir, 356 N.J. Super. 96, 102 (App. Div. 2002)).

Moreover, it is well settled that "[t]he entire controversy doctrine is an equitable principle and its application is left to judicial discretion."  700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011) (citing Allstate N.J. Ins. Co. v. Cherry Hill Pain & Rehab. Inst., 389 N.J. Super. 130, 141 (App. Div. 2006)).  The doctrine's "application is left to judicial discretion based on the factual circumstances of individual cases."  Dimitrakopoulos v. Borrus, 237 N.J. 91, 114 (2019) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)).  When reviewing the trial court's

20                                                          A-1370-20

exercise of such discretion, we will reverse the trial court's decision only if it was clearly erroneous. State v. Simon, 161 N.J. 416, 444 (App. Div. 1999).

Plaintiff argues that we should conduct de novo review based on the Court's decision in Dimitrakopoulos, 237 N.J. at 108. There, in a case involving the entire controversy doctrine, the Supreme Court expressed that "[a]n appellate court reviews de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e). Ibid. However, Dimitrakopoulos is distinguishable in that it involved application of the entire controversy doctrine to a legal malpractice claim. The Court wrote, "[t]he entire controversy doctrine raises special concerns when invoked in the setting of legal malpractice." Id. at 109 (citing Olds v. Donnelly, 150 N.J. 424, 446 (1997)). As such, the exercise of de novo review in Dimitrakopoulos was a result of the narrow facts concerning legal malpractice; the case does not stand for the proposition that all entire controversy claims should be reviewed de novo.

## A.

The two goals of the entire controversy doctrine are "ensuring fairness to parties and achieving economy of judicial resources." Kent Motor Cars, Inc. v. Reynolds & Reynolds, 207 N.J. 428, 443 (2011). Our Supreme Court has accomplished these goals by requiring joinder of claims, Rule 4:30A, and by

requiring the parties to identify in their first pleadings "the names of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts." R. 4:5-1(b)(2). The parties to an action have a continuing obligation to amend the initial disclosure if there is a change in the facts stated in the original certification, and "the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed[.]" Ibid.

When a trial court is presented with a motion to dismiss based on the entire controversy doctrine,

> [it] must first determine whether a Rule 4:5–1(b)(2) disclosure should have been made in a prior action because a non-party was subject to joinder pursuant to Rule 4:28 or Rule 4:29-1(b). If so, the court must then determine whether (1) the actions are "successive actions," (2) the opposing party's failure to make the disclosure in the prior action was "inexcusable," and (3) "the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action." R. 4:5-1(b)(2). If those elements have been established, the trial court may decide to impose an appropriate sanction. Dismissal is a sanction of last resort.
>
> [700 Highway 33 LLC, 421 N.J. Super. at 236-37.]

Notably, the primary inquiry concerns whether both actions "arise from related facts or the same transactions or series of transactions." Dimitrakopoulos, 237 N.J. at 109 (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). "The doctrine does not mandate that successive claims share common legal issues in order for the doctrine to bar a subsequent action." Ibid. (citing Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) and Ditrolio, 142 N.J. at 271). Rather, we must determine whether the separate claims are part of a "single larger controversy because they arise from interrelated facts." Ibid. (quoting DiTrolio, 142 N.J. at 271).

Application of the entire controversy doctrine is meant to "prevent a party from voluntarily electing to hold back a related component of the controversy in the first proceeding by precluding it from being raised in a subsequent proceeding thereafter." Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 240-41 (App. Div. 2002) (quoting Oltremare v. ESR Custom Rugs, Inc., 330 N.J. Super. 310, 315 (App. Div. 2000)). Moreover, while the "entire controversy doctrine is not intended to be a trap for the unwary[,]" we must also be aware of the "possibility that a party has purposely withheld claims from an earlier suit for strategic reasons or to obtain "two bites at the apple." Id. at 241.

Here, the motion judge properly exercised his discretion in determining that Rule 4:5-1(b)(2) applies in the present matter. Namely, the judge properly found that a Rule 4:5-1(b)(2) disclosure should have been made in the Hudson County Engineered Devices Litigation.

A Rule 4:5-1(b)(2) disclosure was required because the present action and the Engineered Devices Litigation arose out of the same transactional facts. The basis of plaintiff's claims in both matters involved Stalwart's defective workmanship during the course of construction at the Project and the fraudulent representations made regarding the quality of the workmanship. In the Engineered Devices Litigation, plaintiff's crossclaim for breach of contract against Stalwart claimed defective workmanship and construction defects. In the present matter, plaintiff is seeking recovery for damages originally caused by Stalwart's defective construction, such as defects in "concrete footings, stairs, columns, foundations, and use of unacceptable fill," and specifically for defendants' failure to inspect, identify and correct such defects that ultimately resulted in remediation.

Additionally, plaintiff's third-party complaint against Ultra in the Engineered Devices Litigation alleged that Ultra was liable for defective work and damages. The complaint further alleged that Ultra entered into contracts

24

with Stalwart to provide labor and materials. Plaintiff alleged that Ultra failed to adhere to industry standards, including local building codes, resulting in extensive remediation by plaintiff. In the present matter, plaintiff's allegations regarding defects and remedial costs similarly derive from defective workmanship on the Project.

Moreover, plaintiff's claims against DiGregorio in the Engineered Devices Litigation were for fraudulent payment requisitions, or fraud relating to misrepresentations made in payment applications regarding the quality and status of the project. In the present matter, plaintiff alleges that defendants Revolution, Roncati, and Architectura "improperly certified various contractor payment applications certifying that the general contractor performed work that it had not done." The facts giving rise to plaintiff's claim in the present matter, namely fraud allegations against defendants Revolution, Roncati, and Architectura, are the exact same as those offered in support of plaintiff's fraud claims against DiGregorio in the Engineered Devices Litigation.

In sum, plaintiff's claims and the damages sought in both actions relate to Stalwart's defective performance and fraudulent representations made regarding the quality and status of the work. Accordingly, the same set of interrelated transactional facts form the basis for both the present action and the Engineered

25

Devices Litigation; as a result, we find no abuse of discretion in the motion judge's finding that Rule 4:5-1(b)(2) applies to the present matter.

We next address plaintiff's contention that the present matter is not subject to the entire controversy doctrine because it is not a successive action, but rather a concurrent action. Plaintiff argues that the complaint in this action was filed March 24, 2017, and that plaintiff filed an amended certification in the Engineered Devices Litigation two weeks later on April 5, 2017. Therefore, plaintiff submits that on March 24, 2017, both matters were concurrently pending.

Plaintiff relies on Alpha Beauty v. Winn-Dixie Stores, 425 N.J. Super. 94, 101 (App. Div. 2012), in support of its argument that the present action was pending at the same time as the Engineered Devices Litigation, and therefore not "successive" for purposes of Rule 4:5-1(b)(2). In Alpha Beauty, the court provided an example as to what constitutes a successive action:

> The most obvious example of this would be an action where A sues B for personal injury damages, and then, later, after A v. B is concluded, A brings a claim against C for having caused the same injuries. A v. C would be a "successive action" within the intendment of the Rule and, in certain circumstances, the Rule authorizes dismissal of the successive suit against C.
>
> [425 N.J. Super at 101.]

The present facts sufficiently mirror the above hypothetical posited in Alpha Beauty. The motion judge found that, on January 25, 2017, an Order of Final Judgment was entered in the Engineered Devices Litigation against DiGregorio on plaintiff's crossclaim in the amount of $681,506. It was not until March 24, 2017, that plaintiff filed its complaint in the matter under review. Despite plaintiff's filing of an amended certification on April 5, 2017, January 25, 2017 marks the date where any further litigation would be considered successive, as this is the date when the court entered judgment. Accordingly, we discern no abuse of discretion in the judge's finding that the present matter constitutes a successive action.

Furthermore, the record clearly supports the motion judge's finding that plaintiff did not comply with Rule 4:5-1(b)(2). As noted, parties to an action are "obligated to reveal the existence of any non-party who should be joined or might have 'potential liability to any party on the basis of the same transactional facts.'" Kent Motor Cars, Inc., 207 N.J. at 444 (quoting R. 4:5-1(b)(2)). Furthermore, a party has a continuing obligation to identify potentially liable parties throughout the course of the litigation. R. 4:5-1(b)(2). This requirement is meant to provide notice to all potentially liable parties, and intends to provide for a "reduction of delay, fairness to parties, and the need for complete and final

27

disposition through the avoidance of 'piecemeal decisions.'" 700 Highway 33 LLC, 421 N.J. Super. at 235 (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989)).

In the deposition of plaintiff's principal, Moshe Winer, he testified that as early as May 2015, plaintiff was aware that inspections performed by defendant JSC were inadequate. However, plaintiff did not list any defendant in the matter under review in its Rule 4:5-1(b)(2) certifications in the Engineered Devices Litigation. Similarly, when plaintiff filed its third-party complaint in the Engineered Devices Litigation, plaintiff did not disclose defendants as potentially liable parties.

Despite plaintiff's contention that it complied with Rule 4:5-1(b)(2) by identifying the existence of the Engineered Devices Litigation in the present action, this does not negate the fact that plaintiff failed to identify defendants in the Engineered Devices Litigation, at which time plaintiff knew defendants were potentially liable. Therefore, we discern no abuse of discretion in the motion judge's determination that plaintiff did not comply with Rule 4:5-1(b)(2).

We now turn to plaintiff's contention that the motion judge "erred by failing to consider the reason for delay in bringing this litigation" and that he instead "simply conflated engaging in piecemeal litigation with inexcusable

conduct." In the judge's written decision granting defendants' motion to dismiss, he stated that "[d]efendants were clearly prejudiced and deprived of vital discovery, which [p]laintiff had an affirmative obligation to identify to the [d]efendants including as to potentially liable parties in the Engineered Devices Litigation, but inexcusably failed to do so." Moreover, in the judge's written decision denying plaintiff's motion for reconsideration, he wrote, "It was clear that this [c]ourt found the [p]laintiff's piecemeal litigation inexcusable as the [c]ourt specifically stated such in its written opinion."

Here, plaintiff submits that it delayed this action so that plaintiff could receive a certification of occupancy and ultimately complete the project before defendants could sabotage it. Although carefully elucidating his reasons as to why he found that defendants would be substantially prejudiced, the motion judge did not set forth his specific findings as to why plaintiff's conduct was inexcusable.

Nevertheless, we do not find this omission constitutes an abuse of discretion. The judge, in his otherwise comprehensive written opinion, looked to the record evidence before him, heard oral argument, and concluded that plaintiff's noncompliance was inexcusable. Significantly, during oral argument held on November 12, 2020, plaintiff's counsel explained,

> And our concerns were that the design professionals
> would stand in the way of my client getting those
> (indiscernible) for this project. Our concerns were
> borne out because . . . when we did serve the complaint,
> the first thing that [defendant] did . . . was pick up the
> phone and leave a voicemail for Bryan Sullivan . . . .
> He called Mr. Sullivan, and he left a profanity-laced
> voicemail promising to, as he said, f**k with the job.
> Use all of his ability and all of his political power in the
> North Bergen Building Department to screw up our job.

Thus, it is clear that the motion judge was well aware of plaintiff's excuse, and found it inadequate under the circumstances, particularly in light of the substantial prejudice suffered by defendants.

As to the substance of plaintiff's excuse, the motion judge did not abuse his discretion in finding that it fell short of the mark. Plaintiff's reason for delaying suit was a tactical strategy based on its claimed fear that defendants would retaliate. Plaintiff's fears were based on nothing more than a 2017 correspondence with defendant Roncati over issues regarding payment for Roncati's services, where Roncati wrote, "If I were you[,] I would be here tomorrow morning to discuss the billing. Your project still hangs in the balance and you seem to have lost perspective on who your friends are and who has always been there to help." This payment dispute, accompanied by what can be viewed as hard-bargaining tactics, hardly renders plaintiff's noncompliance with Rule 4:5-1(b)(2) excusable.

Plaintiff next contends that the motion judge erred in finding that plaintiff's failure to comply with Rule 4:5-1(b)(2) resulted in substantial prejudice to defendants. We disagree.

Indeed, if "the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action," sanctions are appropriate. R. 4:5-1(b)(2). In considering substantial prejudice, courts look to whether the party's "ability to mount a defense . . . [is] unfairly hampered." Hobart Bros. Co., 354 N.J. Super. 229, 243. Courts have said that "[s]ubstantial prejudice in th[e] context [of Rule 4:5–1(b)(2)] means substantial prejudice in maintaining one's defense. Generally, that implies the loss of witnesses, the loss of evidence, fading memories, and the like." Mitchell v. Procini, 331 N.J. Super. 445, 454 (App. Div. 2000) (citation omitted); see also Kent Motor Cars, 207 N.J. at 446.

First, defendants were deprived of an opportunity to examine and investigate the worksite defects. Before the project had been fully remediated, plaintiff initiated this action by filing the complaint on March 24, 2017. However, plaintiff did not serve process until August 22, 2017, after the certificate of occupancy was issued, and, as such, defendants were unaware of the claims pending against them until such time. Therefore, defendants had no

knowledge of plaintiff's allegations against them until after remediation efforts concluded.

Although defendants were still involved in the project throughout the remediation period, they lacked notice that they would be subject to claims regarding defective construction. Because of this, defendants made no attempt to collect evidence, investigate and evaluate the claimed defects, or do anything for purposes of mounting a defense. Had plaintiffs notified defendants of the suit in accordance with Rule 4:5-1(b)(2), they would have been able to adequately prepare a defense.

Second, the trial judge properly found that defendants were also deprived of an opportunity to "preserve and collect evidence by a key witness, Bryan Sullivan." Sullivan was responsible for day-to-day project management and was most knowledgeable about the defects. Sullivan had first-hand knowledge regarding the defects, discovered the defective conditions, and coordinated and supervised the remediation efforts. As a key witness, Sullivan would have been available during the Engineered Devices Litigation, however, he passed away on March 5, 2018. Plaintiff did not identify him until May 17, 2018, and therefore defendants had no opportunity to obtain testimony from Sullivan regarding his first-hand observations and opinions.

A-1370-20

In addition, the record suggests that Sullivan did not prepare a formal report, and that his observations were only recorded in notes and pictures. Such observations were relied upon by plaintiff and plaintiff's expert, as they relied on Sullivan's notes to identify the defects, the remedial work, and calculation of damages. Moreover, plaintiff's experts relied on Sullivan's identification of defects in support of their opinions as to defects attributable to defendants. As noted by the judge, Sullivan's unavailability directly impacts defendants' ability to mount a defense in response to allegations based on Sullivan's notes.

In sum, the motion judge acted well within his discretion in finding that defendants would be substantially prejudiced by the absence of a key witness, where the loss of vital discovery would impair defendants' ability to mount a defense.

We next address plaintiff's argument that the trial court's failure to apply a lesser sanction constitutes an abuse of discretion. This argument lacks merit.

"Since dismissal with prejudice is the ultimate sanction, it will normally be ordered only when no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party." Abtrax Pharma., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 514 (1995). As it relates to the entire controversy doctrine, "in the limited circumstances where a lesser sanction is not sufficient to remedy the

problem caused by an inexcusable delay in providing the required notice, thereby resulting in substantial prejudice to the non-disclosed party's ability to mount an adequate defense[,]" dismissal with prejudice is a viable option. Mitchell, 331 N.J. Super at 453-54.

After finding that plaintiff's noncompliance with Rule 4:5-1(b)(2) was inexcusable and resulted in substantial prejudice to defendants, the motion judge properly found that no lesser sanction would suffice. The judge ultimately found that, since the prejudice cannot be corrected, dismissal is warranted. Defendants' inability to examine crucial evidence and the key witness, Sullivan, cannot be undone; for these reasons, dismissal was warranted, and we find no abuse of discretion.

B.

Plaintiff contends that the motion judge erred in finding that the DiGregorio Judgment, from the Engineered Devices Litigation, precludes recovery from defendants in the present matter. Plaintiff disputes that this would result in double recovery, and argues that damages that made up the DiGregorio judgment do not overlap with the damages sought in the present action.

The motion judge did not err in finding that the complaint should be dismissed to prevent double recovery. It is undisputed that at least some of the

damages would overlap; the DiGregorio judgment was for fraudulent payment requisitions, while plaintiff in the matter under review alleged that defendants Revolution, Roncati, and Architectura "improperly certified various contractor payment applications certifying that the general contractor performed work that it had not done." Therefore, the damages asserted in the present action are duplicative of damages for which plaintiff obtained in the prior litigation. Because the entire controversy doctrine is designed to prevent this from occurring, the judge did not abuse his discretion in finding that dismissal is warranted to prevent double recovery.

Lastly, plaintiff argues that the trial court erred in failing to consider the materials supplied with the motion for reconsideration. This argument also fails.

Motions for reconsideration are governed by Rule 4:49-2. "Reconsideration is a matter to be exercised in the trial court's sound discretion." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Reconsideration should be employed only "for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings v. Bahr, 295 N.J. Super. 374,

35

384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

"A motion for reconsideration is designed to seek review of an order based on the evidence before the court on the initial motion, [Rule] 1:7-4, not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Asterbadi, 398 N.J. Super. at 310 (citing Cummings, 295 N.J. Super. at 384). "Reconsideration cannot be used to expand the record and reargue a motion." Ibid. "[T]he motion is properly denied if based on unraised facts known to the movant prior to entry of judgment." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2022) (citing Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010); and Del Vecchio v. Hemberger, 388 N.J. Super. 179, 188-89 (App. Div. 2006)). However, if the new evidence "dovetail[s] and amplifie[s] the evidence already in the record," it should be considered. Capital Fin. Co. of Del. Valley, Inc., 398 N.J. Super. at 311.

Here, the motion judge properly exercised his discretion in finding that additional documents and arguments regarding plaintiff's inexcusable noncompliance should not be considered on reconsideration. All of the documents were readily available to plaintiff when defendants filed their

motions to dismiss. Because the documents were not newly discovered evidence that was previously unavailable, the judge's refusal to consider such evidence was not clearly erroneous and therefore should not be disturbed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1370-20