**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0006-22

LAURA CASTELLANO, f/k/a
LAURA MIRABELLI,

     Plaintiff-Respondent,

v.

PAUL MIRABELLI,

     Defendant-Appellant.

_____

     Submitted November 8, 2023 – Decided November 17, 2023

     Before Judges Haas and Gooden Brown.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1890-09.

     Susan B. McCrea, attorney for appellant.

     Respondent has not filed a brief.

PER CURIAM

     Defendant Paul Mirabelli appeals from the Family Part's July 22, and

August 3, 2022 orders denying his motions for reconsideration of the trial court's

May 25, 2022 order. In the May 25, 2022 order, the court directed defendant to refinance the mortgage on the marital home to remove plaintiff Laura Castellano's obligation from the mortgage or assume the mortgage within forty-five days; ordered that defendant would be "solely responsible for any additional liens or debt on the property after 2014"; and denied defendant's application for a reduction of his alimony obligation.

Based on our review of the record and the applicable law, we conclude that defendant's arguments are without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons set forth in the trial court's oral decisions, which it rendered on May 25, and July 22, 2022. We add the following comments.

Under the terms of the parties' June 11, 2010 Amended Judgment of Divorce from Bed and Board, plaintiff moved out of the marital home. Defendant was thereafter required to pay plaintiff $4,000 per month in unallocated support.[1] The parties agreed that the marital home would be listed for sale by August 1, 2010.

When a timely sale did not occur, plaintiff filed a motion for an order directing defendant to list the home for sale. The trial court granted this motion

---

[1] The parties have three children, who are now emancipated.

on February 4, 2011. When defendant did not sell the home as required, plaintiff obtained another enforcement order on October 21, 2011.

Defendant still failed to sell the home. Apparently presuming that doing so might expedite the process, plaintiff executed a quitclaim deed of her interest in the home to defendant on April 25, 2014. However, defendant still did not sell the home and, indeed, began taking on additional debt related to the parties' mortgage and incurred other encumbrances on the property.

On March 31, 2015, the trial court denied plaintiff's motion to compel defendant to sell the home, but scheduled a plenary hearing on that issue and on defendant's request for a downward adjustment of his support obligation. After further delays, the court directed the parties to participate in settlement negotiations. As a result, the parties agreed that defendant's support obligation would be reduced from $4,000 to $3,000 per month and that after the home was sold, "the net proceeds of said sale shall be equally divided between the parties and so distributed." The court memorialized the settlement in a January 21, 2016 order.

However, defendant refused to sell the house or remove plaintiff from the mortgage. He took the position that he was permitted to continue to incur unlimited debt on the house and to completely eliminate the parties' equity in

3

the property. The home was soon the subject of a foreclosure action. Plaintiff then made a motion to require defendant to remove her from the mortgage or permit her to sell the home. Defendant responded by filing a cross-motion to reduce his support obligation.

At the May 25, 2022 oral argument on the parties' competing motions, the trial court stated at the outset that defendant was "going to be responsible for any and all debts related to the house from 2014 [the date plaintiff executed the quitclaim deed to defendant] on." Defendant's attorney responded that "we never questioned that."

As the argument proceeded, the court again stated, that it "started this off and . . . said [it] was making it clear that [plaintiff] from 2014 on would not be responsible for . . . anything having to do with the mortgage, and we all said we were okay with that." Defense counsel responded, "Perfectly okay with that. I never wanted her to be."

As the argument on this point drew to a close, the court again addressed defendant's attorney and stated, "[W]e've already established that you would agree that post-2014 that [defendant] is responsible for the mortgage." Defense counsel responded, "Right. I don't -- that's fine. He is responsible." However, despite these concessions, defendant's attorney balked at having the court

A-0006-22

require defendant to take plaintiff's name off the mortgage or assume the mortgage because he might have "to incur cost" or "incur a change of interest rate" by doing so.

The court rejected defendant's contentions and ordered him to either refinance the mortgage in his own name to remove plaintiff from the mortgage, or execute an assumption of the mortgage with the bank within forty-five days. The court explained that "the intent of the parties is clear in that respect because it defies logic . . . that one would eat away your interest in [the] property and then somehow [you would] still be responsible for the mortgage."  If defendant failed to take these actions, the court stated it would entertain a motion by plaintiff to compel the sale of the property.  When the property was sold, the court also directed that defendant would be solely responsible for any liens or debt on the property after 2014 together with any "arrears, interest and penalties added to the first mortgage from his foreclosure and late payments since [2014]."[2]

---

[2]  There was a typographical error in the May 25, 2022 order where the court stated that defendant would be "solely responsible for arrears, interest and penalties added to the first mortgage from his foreclosure and late payments since 2010" instead of since 2014.  The court corrected this mistake in its July 22, 2022 order denying defendant's motion for reconsideration.

A-0006-22

The trial court also denied defendant's motion for a reduction of his support obligation. The court found that defendant failed to demonstrate there had been a substantial change of circumstances since the time the support was last adjusted. The court reasoned that while defendant may have experienced a decrease of business during the COVID-19 pandemic, this was only a temporary condition that did not warrant a modification at that time. The court memorialized its rulings in a May 25, 2022 order.

Defendant thereafter filed a motion for reconsideration of the May 25 order, raising the same arguments he had already unsuccessfully presented to the trial court. Following oral argument, the court denied defendant's motion on July 22, 2022. This appeal followed.

On appeal, defendant repeats the same contentions he raised before the trial court. He asserts that: (1) "[t]he court[']s decision should be reversed where there was an abuse of discretion"; (2) "[s]ufficient grounds exist for the [c]ourt to reconsider the order entered on May 25, 2022"; (3) "[t]he [c]ourt cannot modify a Matrimonial Agreement arrived by mutual consent"; (4) "[t]he [c]ourt erred in requiring [d]efendant be solely responsible for any additional liens or debts on the property after 2014 and that [d]efendant is solely responsible for arrears, interest, or penalties added to the First Mortgage from his Foreclosure

and late payments since 2014"; and (5) "[t]he [c]ourt erred in finding that [d]efendant had failed to establish a prima facie showing of a change in circumstances entitling him to a review of his [support] obligation."

The scope of our review of the Family Part's order is limited. We owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Thus, "[a] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record." MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

We owe no deference to the trial court's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). However, we will not interfere with "'the factual findings and legal conclusions of the trial [court] unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (second alteration in original) (quoting Cesare, 154 N.J. at 412). We will reverse

A-0006-22

the Family Part's decision "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' . . . to ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)).

We review the denial of a motion for reconsideration to determine whether the trial court abused its discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). "Reconsideration cannot be used to expand the record and reargue a motion." Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). A motion for reconsideration is meant to "seek review of an order based on the evidence before the court on the initial motion . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Ibid. (citation omitted).

For these reasons, reconsideration should only be granted in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings, 295 N.J. Super. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). Therefore, we have held that "the magnitude of the error cited must be a game-changer for

reconsideration to be appropriate." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010).

Applying these principles, defendant's arguments concerning the May 25, July 22, and August 3, 2022 orders reveal nothing "so wide of the mark" that we could reasonably conclude that a clear mistake was made by the trial court. The record amply supports the court's factual findings and, in light of those findings, its legal conclusions are unassailable. Because defendant raised the exact same contentions in his motion for reconsideration that had already been soundly rejected by the trial court, the court also did not abuse its discretion by denying defendant's reconsideration motions. Cummings, 295 N.J. Super. at 389.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0006-22