NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2455-23

LINDSAY PALMISANO,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY
ADMINISTRATIVE OFFICE OF
THE COURTS and MUNICIPAL
DIVISION,

     Defendants-Respondents,

and

HONORABLE JAMES P.
SLOAN, J.M.C.,

     Defendant.

> **APPROVED FOR PUBLICATION**
>
> **July 14, 2025**
>
> **APPELLATE DIVISION**

Submitted May 29, 2025 – Decided July 14, 2025

Before Judges Currier, Marczyk, and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2084-23.

Mets, Schiro & Manetta, LLP, attorneys for appellant (Nicholas P. Milewski, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondents (Janet Greenberg Cohen, Assistant

Attorney General, of counsel; Eric Intriago, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MARCZYK, J.A.D.

Plaintiff Lindsay Palmisano appeals from the trial court's April 1, 2024 order dismissing her complaint with prejudice against defendant State of New Jersey Administrative Office of the Courts and Municipal Division (AOC) pursuant to Rule 4:6-2(e). The primary issue on appeal is whether plaintiff, a municipal court administrator, is an employee of the AOC, thereby allowing her to assert a claim against the AOC under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Based on our review of the record and the applicable legal principles, we conclude plaintiff was employed by Vernon Township (Township), not the AOC, and, therefore, we affirm.

I.

Plaintiff has been employed as a court administrator for the Municipal Court of the Township since 2019. She filed a complaint against the AOC and defendant Municipal Court Judge James B. Sloan in October 2023, alleging Sloan engaged in inappropriate conduct when he served as a public defender in the Township and later when he became the municipal court judge in January 2023. Specifically, plaintiff claimed Sloan "made several disturbing sexist comments" and "offensive, sexist remarks throughout his time working with"

her. She also asserted that on April 25, 2023, while Sloan was adjudicating a matter before the court, he came off the bench and "grabbed [plaintiff's] hair and yanked it back forcibly."

The next day, plaintiff filed "a police report about . . . Sloan's assault of" her. The Police Chief for the Township, Daniel Young, notified the Township Administrator about plaintiff's complaint and also informed the AOC of Sloan's alleged misconduct by contacting Morris-Sussex County Vicinage Municipal Division Manager Rebecca Muller. Muller purportedly advised Chief Young that she would "reach[] out to" plaintiff to speak with her about this matter. Later that day, plaintiff contacted Muller. Muller allegedly advised the AOC "was not taking any action regarding . . . Sloan's behavior" because "it was a Township matter." Muller did inform plaintiff she could file an ACJC[1] ethics complaint against Sloan.

On May 1, 2023, following an investigation and interviews with witnesses to the incident, the Township suspended Sloan from serving as a municipal court judge. That same month, plaintiff filed an ACJC complaint against Sloan when he attempted to return to the bench because the AOC had not taken any action against him. On June 6, 2023, Assignment Judge Stuart

---

[1] ACJC is the Advisory Committee on Judicial Conduct.

A-2455-23

Minkowitz signed an order suspending Sloan from acting as a municipal court judge.

Plaintiff's complaint asserted sexual harassment claims against Sloan and the AOC under the LAD and an aiding and abetting claim against Sloan in violation of N.J.S.A. 10:5-12(e). The AOC moved to dismiss plaintiff's complaint. Plaintiff opposed the motion, and the court held oral argument in March 2024. The AOC argued neither plaintiff nor Sloan[2] was employed by the AOC, and plaintiff's claims failed because she did not establish the requisite employer-employee relationship under the LAD. It further asserted the facts giving rise to plaintiff's sexual harassment claim occurred solely in the municipality, which "is not something in which the AOC has any oversight."

Plaintiff contended the case law supports the conclusion that court administrators are employees of the AOC. She argued the AOC controls and oversees "every aspect of hiring," has the power to fire, and it licenses court administrators, who must be approved by the assignment judge. Plaintiff asserted Rule 1:33-4 "makes it entirely clear that the Judiciary is supposed to control . . . the budgets, personnel, and facilities of municipal courts."

---

[2] Plaintiff later filed a stipulation of dismissal as to Sloan.

On April 1, 2024, the court rendered an oral decision and accompanying order granting the AOC's motion and dismissing it from the case with prejudice. The court noted that an employer-employee relationship is a prerequisite for bringing a claim under the LAD. It stated that it "ha[d] no choice but to grant the motion even at this early stage of the litigation because as a matter of law there [wa]s no employer-employee relationship." Relying on N.J.S.A. 2B:12-10(a), the court also determined "[n]o further discovery w[ould] change the clear, unmistakable legal determination that [p]laintiff, as a Municipal Court Administrator in this State, never had an employee-employer relationship" with the AOC. The court found Thurber[3] supported the AOC's position because there, the assignment judge's determination to preclude the plaintiff from working in the municipal court did not extend to the plaintiff's continued employment with the city, similar to Judge Minkowitz's role here. It further indicated plaintiff's arguments "touch[ed] merely on the Judiciary's limited role in overseeing and regulating portions of the Municipal Court

---

[3] Thurber v. City of Burlington, 387 N.J. Super. 279, 300 (App. Div. 2006), aff'd, 191 N.J. 487 (2007). The parties and the trial court relied exclusively on our opinion in Thurber. The Supreme Court affirmed our decision and cited favorably to our rationale. Thurber v. City of Burlington, 191 N.J. 487, 501 (2007). We reference primarily this court's opinion in considering plaintiff's arguments because plaintiff did not cite to the Supreme Court's decision.

A-2455-23

System" but did not support plaintiff's contention that she is an AOC employee.

## II.

Plaintiff principally argues the court erred in granting the AOC's motion to dismiss and finding she is not an employee of the AOC because the law of our State indicates a court administrator is a State employee. Alternatively, plaintiff contends she is, "at the very least," a joint employee of the AOC and the Township.

We review de novo a trial court's decision on a motion to dismiss a complaint under Rule 4:6-2(e) for failure to state a claim upon which relief can be granted. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). "When reviewing a motion to dismiss under Rule 4:6-2(e), we assume that the allegations in the pleadings are true and afford the pleader all reasonable inferences." Sparroween, LLC v. Twp. of W. Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017). "The essential test is 'whether a cause of action is "suggested" by the facts.'" Sashihara v. Nobel Learning Cmtys., Inc., 461 N.J. Super. 195, 200 (App. Div. 2019) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). Thus, a motion to dismiss a complaint under Rule 4:6-2(e) "must be based on the pleadings themselves." Roa v. Roa, 200 N.J. 555, 562 (2010).

Nonetheless, "a dismissal is mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted." Rieder v. N.J. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987). "[P]leadings reciting mere conclusions without facts and reliance on subsequent discovery do not justify a lawsuit." Glass v. Suburban Restoration Co., 317 N.J. Super. 574, 582 (App. Div. 1998). As such, "[c]omplaints cannot survive a motion to dismiss where the claims are conclusory or vague and unsupported by particular overt acts." Delbridge v. Off. of Pub. Defender, 238 N.J. Super. 288, 314 (Law Div. 1989).

The LAD prohibits unlawful employment practices and discrimination based on an employee's gender regarding the terms and conditions of employment. N.J.S.A. 10:5-12(a). "The LAD is remedial legislation that should be liberally construed to advance its purposes." Rios v. Meda Pharm., Inc., 247 N.J. 1, 10 (2021). It is "intended to prohibit discrimination in the context of an employer/employee relationship." Pukowsky v. Caruso, 312 N.J. Super. 171, 184 (App. Div. 1998).

To state a valid claim for hostile work environment sexual harassment under the LAD, the "plaintiff must allege that 'the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable [employee] believe that (4) the

conditions of employment are altered and the working environment is hostile or abusive.'" Rios, 247 N.J. at 10 (emphasis omitted) (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)). However, "the lack of an employment relationship between the plaintiff and the defendant will preclude liability." Thomas v. Cnty. of Camden, 386 N.J. Super. 582, 594 (App. Div. 2006).

Plaintiff asserts the State should be deemed her employer because the LAD is remedial in nature and should be liberally construed. She contends the case law supports her position that "a [c]ourt [a]dministrator is an employee of the State," and "the AOC has complete control over judicial employees, including local court administrators."

Plaintiff asserts the trial court failed to consider Rule 1:33-4, which provides that assignment judges are "responsible for all personnel matters in municipal courts," and therefore, "the Assignment Judge has complete authority over [c]ourt [a]dministrators." She also argues that because court administrators are bound by the judicial canons, required to take continuing legal education courses and periodic examinations to become certified by the State, and that the AOC can remove them if they are not in good standing, it follows that they are employees of the State.

Plaintiff further contends the court improperly found <u>Thurber</u> does not support her arguments because that case stands for the proposition that municipal court administrators are employees of the State, and the assignment judge had "final authority" over municipal court personnel. She next contends the statutes establishing municipal courts and court administrators support a finding she is employed by the AOC, including N.J.S.A. 2B:12-11, which authorizes the Supreme Court, through a Municipal Court Certification Board, to certify court administrators and revoke or suspend certifications.

Plaintiff also posits the Township does not have the ultimate power over personnel matters within the State because N.J.S.A. 2B:12-1 only indicates municipalities must establish municipal courts, but these courts "are governed by and subject to the rules created by the Judiciary." She further relies on N.J.S.A. 2B:12-11 for the proposition that the AOC has the ultimate authority over municipal court administrators, which she claims supports her contention she is an employee of the AOC.

Plaintiff asserts the State also had authority over Sloan's employment because Judge Minkowitz suspended Sloan, and the AOC subsequently terminated his employment. Plaintiff argues the AOC had an obligation to protect her from a State employee's conduct, and the AOC should be deemed her employer under the LAD to remedy its failure to act and safeguard her.

 A-2455-23

The AOC, in turn, argues various statutes confirm that municipal court employees are not State employees. The AOC contends the language of N.J.S.A. 2B:12-1(a), -7(b), -10(a), and -15 confirm that municipal court employees are not State employees. It also argues Thurber supports the trial court's dismissal of plaintiff's claims because that case "held that [a]ssignment [j]udges must defer to the civil service process in adjudicating appeals from a municipality's decision to terminate a municipal court employee," supporting the conclusion municipal court employees are not State employees.

We conclude the court did not err in finding there was no employer-employee relationship between plaintiff and the AOC because the statutes governing municipalities demonstrate plaintiff is employed by the Township. The plain language of N.J.S.A. 2B:12-10(a) states a "municipality shall provide for an administrator and other necessary employees for municipal court and for their compensation. With approval of the Supreme Court, an employee of the county or municipality, in addition to other duties, may be designated to serve as administrator of the municipal court." (Emphasis added).

N.J.S.A. 2B:12-10(a) is clear that a municipality is responsible for hiring and paying a municipal court administrator. Although an administrator who is already employed by the Township in another capacity can only be employed

upon the Supreme Court's approval under N.J.S.A. 2B:12-10(a), that does not mean the employee becomes an employee of the AOC.

Moreover, N.J.S.A. 2B:12-1(a) states "[e]very municipality shall establish a municipal court," not the AOC. This, coupled with the municipality's responsibilities to hire and compensate municipal court administrators under N.J.S.A. 2B:12-10(a), crystallizes a municipality's employer-employee relationship with municipal court administrators. Where a municipality fails to establish a municipal court, N.J.S.A. 2B:12-1(a) gives the assignment judge of the vicinage the authority to "order violations occurring within its boundaries" to be heard in another municipal court in the county until the municipality establishes a municipal court. However, the municipality without a court remains "responsible for all administrative costs" pending the establishment of its own municipal court. Ibid.

Plaintiff's contention that "the State oversees and controls the entire process of municipalities 'establishing' their courts" is belied by N.J.S.A. 2B:12-10(a) and 2B:12-1(a) and the absence of statutory language granting such authority to the State. More importantly, these statutes do not support the inference that "any employee of a municipal court is ultimately an employee of the State." Indeed, reading N.J.S.A. 2B:12-10 in conjunction with N.J.S.A. 2B:12-1 indicates municipalities establish municipal courts, employ municipal

court employees, including an administrator, and provide them with compensation. Moreover, under N.J.S.A. 2B:12-7(b), "judges of municipal courts shall be paid annual salaries set by ordinance or resolution of the counties or municipalities establishing the court."

The AOC does not establish, fund, maintain, or direct the day-to-day operations of municipal courts. That said, Article VI, Section II, Paragraph 3 of the State Constitution provides, "[t]he Supreme Court shall make rules governing the administration of all courts in the State and, subject to law, the practice and procedure in all such courts." "[T]he primary reason for the adoption of a new constitution in 1947 was the people's desire 'to establish a simple but fully integrated system of courts and to give the judiciary the power and . . . responsibility for seeing that the judicial system functioned effectively in the public interest.'" Thurber, 387 N.J. Super. at 295-96 (quoting Winberry v. Salisbury, 5 N.J. 240, 244 (1950)).

Given that municipal courts handle millions of cases per year,[4] the Supreme Court enacted rules governing the operation of those courts and providing certain oversight. For example, Rule 1:33-4(b) designates the assignment judge of each vicinage as the "authorized representative" of the Chief Justice "for the efficient and economic management" of courts within the

---

[4] N.J. Cts., The New Jersey Courts: A Guide to the Judicial Process 10 (2019).

vicinage, including budget, personnel, and facilities. Rule 1:33-4(c) further provides the assignment judge is "responsible for the supervision and efficient management of all court matters." However, these Rules do not impact the employer-employee relationship of municipal court administrators and their respective municipalities. Rather, they set forth the assignment judge's administrative and supervisory responsibilities in overseeing the municipal court system. They do not support the conclusion that plaintiff was employed by the AOC. Furthermore, Rule 1:33-4 grants assignment judges certain "responsibilities," not complete authority, over "matters" affecting municipal courts, including personnel. That is, the scope of an assignment judge's role under this Rule merely concerns overseeing the municipal court system within a vicinage, which does not imply all municipal court staff members are employees of the AOC.

The trial court appropriately found Thurber supports the AOC's position because the court there recognized the limits on an assignment judge's role over municipal court personnel. In Thurber, the plaintiff "had been employed by the City as a deputy municipal court administrator." 387 N.J. Super. at 283. We rejected "the argument of [the] plaintiff's employer, the City of Burlington," that the vicinage's assignment judge, not the Merit Systems Board (MSB), should have determined whether a municipal court administrator

should be disciplined after pleading guilty to reckless driving and disturbing the peace. Id. at 283-85.

When the plaintiff was initially charged, the Assignment Judge wrote a letter to the City's mayor and council stating he was "exercising [his] authority as Assignment Judge . . . pursuant to Rule 1:33-4 to temporarily remove [the plaintiff] from the Municipal Court" but left to the City's "sound discretion" whether to suspend the plaintiff or "employ her in another capacity." Id. at 284. Subsequently, the mayor informed the plaintiff that, "[u]ntil the charges have been disposed, [the plaintiff's] employment with the City . . . is suspended . . . ." Ibid. After the plaintiff pled guilty, the Assignment Judge wrote a letter "directing" the City solicitor to "inform the Mayor and Council to take disciplinary action against [the plaintiff]." Id. at 285.

The City issued a preliminary notice of disciplinary action and appointed a hearing officer to investigate the circumstances surrounding the plaintiff's misconduct, and the hearing officer recommended terminating the "plaintiff's 'employment with the City.'" Id. at 286. After reviewing the findings and recommendations, the assignment judge "directed" the City to terminate the plaintiff from her position as deputy court administrator. Id. at 287. The plaintiff appealed to the MSB the City's decision to terminate her employment, and, subsequently, the assignment judge informed the City that his use of the

14

word "termination" was misconstrued because he "simply direct[ed] that [the plaintiff] be removed from her position in the Municipal Court" and that the decision to continue the plaintiff's employment with the City "in some other capacity [wa]s solely within [the City's] authority." Ibid.

On appeal, the MSB concluded it had jurisdiction over the matter because "the City . . . , not the judiciary, is the appointing authority for municipal court personnel," and ordered the City to reinstate the plaintiff's position as deputy municipal court administrator. Id. at 292 (emphasis omitted). This court determined, "[d]espite th[e] broad description of powers [under Rule 1:33-4(b)], not every personnel decision lies within the assignment judge's discretion . . . ." Id. at 297. We concluded our Supreme Court did not intend for the powers enumerated in Rule 1:33-4 to permit an assignment judge to "engage in a dispute concerning . . . a municipal employee's alleged unbecoming conduct and the discipline to be imposed." Id. at 297. Instead, it found the MSB had authority under N.J.S.A. 2B:11-5(a) to consider whether to remove or discipline a deputy municipal court administrator. Id. at 298.

Here, plaintiff's reliance on Thurber is misguided because this court did not conclude that the deputy court administrator was an employee of the State. Instead, we repeatedly referred to the deputy court administrator as an

15

employee of the City and recognized the limits of an assignment judge's role and authority over municipal court personnel. Id. at 300. Our Supreme Court likewise noted, "The facts that give rise to this matter are not in dispute. At the time of the events in question, [the] plaintiff . . . had been employed by [the] defendant City of Burlington . . . as a [d]eputy [c]ourt [a]dministrator . . . ." Thurber, 191 N.J. at 491.

Plaintiff's reliance on N.J.S.A. 2B:12-11 is also unpersuasive. She asserts the AOC is responsible for the hiring and firing process because, pursuant to N.J.S.A. 2B:12-11, the Supreme Court establishes training requirements for court administrators, certifies them upon completing an examination, and can revoke or suspend their certifications for "dishonest practices, or failure to perform . . . [their] duties." However, the statute provides the "Supreme Court may appoint a Municipal Court Administrator Certification Board," and the Board is responsible for matters involving the credentialing process, including designing the exam for certification and establishing the courses to train municipal court administrators and the procedures for certification. N.J.S.A. 2B:12-11(a)(1) to (3). Additionally, a person cannot be appointed as a municipal court administrator under the statute unless they hold a certificate issued by the Court and may have their

certificate revoked for dishonest practices or neglect of their duties. N.J.S.A. 2B:12-11(d), (h).

The certification of a municipal court administrator merely concerns the qualifications to hold that position, as set by a board, and while section (h) allows for the suspension or revocation of a municipal court administrator's license, the statute does not suggest the AOC has the power to hire or terminate an employee. Moreover, the statute does not provide that municipal court administrators are employees of the AOC. Rather, it only addresses education, credentialing, and license revocation provisions. As the trial court aptly noted, plaintiff's argument "touch[es] merely on the Judiciary's limited role in overseeing and regulating portions of the Municipal Court System," which "do[es] not . . . support a conclusion [that] further discovery . . . could show [p]laintiff is a State [AOC] employee."

Plaintiff next avers the "AOC's function and participation" in the Township's municipal court causes it to be plaintiff's employer under any of the tests for determining whether a worker is an employee or independent contractor. Plaintiff contends "the State is plainly [p]laintiff's employer" based on the factors outlined under the "control test" and "relative nature of work test."

The AOC counters that assuming the case law and statutes are not dispositive, no employment relationship exists under the LAD test for determining an employer-employee relationship. The AOC also contends that it is unclear whether plaintiff's use of the "control" and "relative nature of the work" tests are applicable because they are used to determine whether someone is an employee or independent contractor. It avers those tests would nevertheless lead to the conclusion that plaintiff is not employed by the AOC.

"[I]n the context of a[n] LAD claim," this court has developed a twelve-factor test to ascertain "whether an employment relationship exists between the parties." Thomas, 386 N.J. Super. at 595 (quoting Kounelis v. Sherrer, 396 F. Supp. 2d 525, 532 (D.N.J. 2005)). This test[5] is used "in cases lacking an actual

---

[5] The twelve factors include:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer"; (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

18

or customary employer-employee relationship, such as in instances of dual employment" or "to ascertain whether the worker is really functioning as an independent contractor." Ibid.

As we have determined there was no employer-employee relationship, we need not address the twelve-factor test. Likewise, given our view that a customary employer-employee relationship existed between plaintiff and the Township, and that the Township was plaintiff's sole employer, we need not address plaintiff's argument that she was a joint employee of the AOC.

In conclusion, if the Legislature intended municipal court administrators to be considered employees of the AOC, it could have expressly done so. Instead, the Legislature enacted N.J.S.A. 2B:12-10(a), specifically establishing that municipalities "shall provide for an administrator" of municipal courts and pay "their compensation." Although the AOC provides oversight and supervision of municipal courts, that does not equate with the AOC establishing an employer-employee relationship with plaintiff.

_____

> [D'Annunzio v. Prudential Ins. Co. of Am., 383 N.J. Super. 270, 278 (App. Div. 2006) (quoting Pukowsky, 312 N.J. Super. at 182-83).]

To the extent we have not addressed any other arguments raised by plaintiff, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2455-23